WESTON v. JOHN L. ROPER LUMBER COMPANY.

(Filed 12 March, 1913.)

1. Partition — Tenants in Common — Judgments—Title—Severalty of Possession.

Where the title to lands is not put in controversy, in partitioning lands among tenants in common, the effect of the proceeding is to designate the shares of the tenants in common, allotted in severalty to each, which cannot have the effect of creating any title that the tenants had not formerly held.

2. Same—Estoppel.

A judgment in proceedings for partition does not estop a grantee of one of the parties, who has purchased the lands

allotted in severalty to his grantor, to deny the title of another party to a different part of the lands divided in proceedings wherein the title to lands had not been raised or adjudicated.

APPEAL by defendant from *Bragaw, J.,* at March Term, 1912, of CAMDEN.

Civil action. A number of issues were submitted, but it is only necessary to set out two, viz.:

3d. Is the plaintiff the owner of the tract of land first described in the complaint as Lot No. 1 in the New Lebanon Division? Answer: Yes.

7th. Is the plaintiff the owner of the tract of land described in the complaint as Lot No. 4 in the New Lebanon Division? Answer: No.

The jury assessed the plaintiff's damages at $7,630. From the judgment rendered, the defendant appealed.

*Winston & Biggs, G. Taylor Gwathmey, M. H. Tillett, Ward & Grimes, Charles Whedbee, Ward & Thompson for plaintiff.*
*W. B. Rodman, W. M. Bond, and Angus D. MacLean for defendant.*

BROWN, J. This action was brought to try the title to certain lands in Camden County known as Lots Nos. 1 and 4 of the New Lebanon Division, a partition of a large body of land made in 1819 among a large number of tenants in common, and recorded in said county.

In apt time the defendant entered a motion to nonsuit, upon the ground that the plaintiff upon all the evidence had failed to show title in himself to the lands in controversy. This motion was overruled, and the defendant duly excepted.

There are a large number of assignments of error in the record, but in the view taken by a majority of the Court, it is only necessary to consider the motion to nonsuit, as we are of opinion that it should have been sustained.

The plaintiff deraigned his title from the New Lebanon partition and offered in evidence no grant from the State. By this division Lot No. 1 was allotted to Enoch Sawyer, who conveyed to Carey Weston. Plaintiff claims by descent from him.

Lot No. 12 of the New Lebanon Division was allotted to Mills and Josiah Riddick, and for the purpose of showing that the defendant claimed Lot No. 12 under Mills Riddick and under said division, plaintiff offered deeds conveying Lot No. 12 from Mills Riddick to Whitehead, and from Whitehead to John L. Roper, and from him to the defendant.

For the purpose of showing an independent source of title, acquired by the defendant long afterwards, the defendant introduced a deed from the State Board of Education to George W. Roper, dated 24 October, 1904, and from George W. Roper to defendant, 14 March, 1905. It is admitted that all the lands in controversy are within the boundaries of these deeds.

It is practically admitted, and all the evidence for plaintiff as well as defendant shows that the lands in controversy are swamp lands. The New Lebanon Division refers to and calls these lands a juniper swamp, and plaintiff's witness Lewis testified that the land in controversy is swamp land.

Upon these facts it is plain that unless the plaintiff proved that the *locus in quo* had been granted by the State prior to 1825, the title vested in the State Board of Education and passed from it to George W. Roper, and from him to the defendant. *Board of Education v. Lumber Co.,* 158 N. C., 315. Constitution, Art. IX, secs. 9 and 10.

The law presumes that those claiming such lands under the deed of the State Board of Education acquired a good and valid title, and the burden of proof is placed on the adverse party to rebut such presumption by showing a good and valid title in himself. Revisal 1905, sec. 4047; *Board of Education v. Makely,* 139 N. C., 34; *Board of Education v. Lumber Co., supra.*

No grant from the State to any one covering the land in controversy is in evidence; but to meet this difficulty plaintiff contends that it is admitted in the pleadings (section 1 of amended complaint and section 1 of answer thereto) that the lands in controversy were granted to Benjamin Jones. The answer admits "that on 10 July, 1788, the State of North Carolina issued a grant to one Benjamin Jones; that that appears upon the books found in the office of the Register of Deeds of Cam-

den County in Book D, page 363, which purports to be a copy of said grant. The other matters alleged in section 1 are denied."

This section practically denies everything alleged except that a grant to one Benjamin Jones appears on the records of Camden County. It denies the validity of the grant, and that its descriptive words embrace the land in controversy.

We find no evidence in the record tending to prove that the description in the grant covers the land in controversy, although there is evidence that the description in the complaint does.

The plaintiff does not claim title to any part of the lands in controversy by possession. All his testimony negatives such claim. On this point the plaintiff testified: "I never claimed the lands in controversy until one or two years ago, when a man named Johnson came to me about some property in this same Dismal Swamp, situated in Pasquotank County, and told me the Richmond Cedar Works had been· in possession long enough to give them title, and that I had only paper title, not actual possession; he wanted to buy it. I employed Mr. Gwathmey to go down and look into it; he dug up the record as to this property in dispute; and then I entered into a contract with the Richmond Cedar Works by which they were to pay a part of the expense of this litigation and to receive a part of whatever money might be recovered in this suit. . . . I had never paid any taxes on this land; so far as I know, my father never paid any taxes on this land; so far as I know, my father never claimed this land."

Therefore we conclude, under the authorities cited, that the defendant has shown a clear title to the land in controversy paramount to that of the plaintiff.

This disposes of the plaintiff's contention that he and the defendant claim under the same common source, to wit, the Lebanon Division, and that defendant cannot deny plaintiff's title.

We have held that defendant has shown an outstanding valid title to the *locus in quo* and has connected itself with such title. *Mobley v. Griffin,* 104 N. C., 115; *Whissenhunt v. Jones,* 78 N. C., 361; *Love v. Gates,* 20 N. C., 498.

But the plaintiff contends that as he claims title to Lot No. 1 under Enoch Sawyer, to whom it was allotted in the New Lebanon Division, and as he has shown mesne conveyances from Mills Riddick to defendant for Lot No. 12, which was allotted to Riddick, that by virtue of the partition proceedings defendant is estopped to deny that plaintiff as the successor in title of Enoch Sawyer is the owner in fee of the land in controversy, and is precluded from setting up this after-acquired paramount title against plaintiff. In support of this position, plaintiff relies upon the principles laid down in *Carter v. White,* 134 N. C., 466.

We are not disposed to call in question this decision, although it reversed the former decision in the same case (131 N. C., 14), and its correctness was challenged by the present *Chief Justice* in a dissenting opinion.

We are of·opinion that the principle laid down in *Carter v. White* does not debar a purchaser of lands, who acquired the title of one of the partitioners through mesne conveyances to a part of the land divided, from afterwards acquiring an outstanding and valid legal title to other portions of the tract so divided.

The title which the defendant purchased from the State Board of Education through George W. Roper was an after-acquired· outstanding valid title to Lots 1 and 4, and we see nothing in law or morals which debarred defendant from purchasing it. At the very time defendant acquired this title, plaintiff testifies he did not claim these lots in controversy.

In the opinion of the Court in *Carter v. White,* 134 N. C., 473, it is said: "In the view which we take of the effect of the partition proceedings it is not necessary to decide the effect of this estoppel upon an after-acquired outstanding title, and we forbear to express an opinion thereon."

We think the learned counsel for plaintiff in their brief practically admit that the proposition now under consideration is left an open question, when they say: "It is suggested in what is so lucidly enunciated in *Carter v. White* that the judgment of the court is conclusive as to an after-acquired title, not only upon the parties, but would also conclude their heirs, assigns, and grantees."

However, that is left an open question, and it may be that the court would hold that the defendant in this case, which is a successor in title, would not be estopped to set up an outstanding paramount title and to claim under it.

It is not necessary to decide this question here, insomuch as there is no paramount outstanding title shown.

That there is a paramount valid title which has been acquired by defendant from the State many years after the New Lebanon Division was made, we have already held.

This title was in no way represented by any of the parties to the partition proceedings, and although the defendant may be a grantee of Lot No. 12, we do not think it is estopped to set up this new and independent title, subsequently acquired, to Lots 1 and 4. 17 A. and E. Enc. (1 Ed.), 819. *Henderson v. Wallace,* 72 N. C., 451; 16 Cyc., 716; *Frey v. Ramsour,* 66 N. C., 466.

We doubt very much that the learned judge who wrote the opinion in *Carter v. White* intended to deny the right of a grantee of a tract of land allotted to his prior grantor in partition proceedings to acquire an outstanding legal title, or to hold that he would be estopped under all circumstances to deny the title of every partitioner to the tracts allotted to such partitioner in the division.

In commenting upon *Carter v. White,* the judge who wrote that opinion says: "The decision in that case is based upon the fact that the exact interest of each party was put in issue and settled by the judgment," citing *Forder v. Davis,* 38 Mo., 107, in which it is said of the judgment: "The partition establishes the title, severs the unity of possession, and gives to each party an absolute possession *of his portion."* "As a general rule, parties to a judgment are not bound by it in a subsequent controversy between themselves, unless they are adversary parties in the original action; that is to say, a judgment for or against two or more joint parties ordinarily determines nothing as to their respective rights and liabilities as against each other in their own subsequent controversy," citing Black on Judgments, sec. 599; 1 Freeman on Judgments, sec. 158.

The learned judge proceeds to say: "It would work a great wrong to the defendants herein to permit the judgment in the partition proceedings, the only purpose of which was to have Colonel Simmons' one-half interest in the land set apart to him, to divest them of their title to a share of the land, not in any way in litigation. To do so would make estoppel justly odious." *McCollum v. Chisholm,* 146 N. C., 24.

In *Harrison v. Ray,* 108 N. C., 215, which was a partition by consent wherein the tenants mutually conveyed by deed to each other the several allotments, it was held that the deeds did not operate as an estoppel, except so far as they established the extent of the interest of each tenant in his ancestor's lands.

In *Harrington v. Rawls,* 131 N. C., 39, it is held that a deed of partition conveys no title, but is simply a severance of the unity of possession.

In *Jones v. Myatt,* 153 N. C., 230, in the opinion of the Court by *Mr. Justice Manning* it is said: "It is settled by several decisions of this Court that actual partition merely designates the share of the tenant in common, and allots to him in severalty. It does not create or manufacture any title," citing *Carson v. Carson,* 122 N. C., 645; *Williams v. Lewis,* 100 N. C., 142.

In other jurisdictions it is held that a judgment in partition is conclusive upon all the parties thereto as to whatever title or claim they had to the land at the time of the rendition of the judgment, but it did not have the legal effect of changing the title nor of vesting any new or additional title in the land allotted and set off to each in severalty. *Wade v. Dera,* 50 Cal., 376; *Christy v. Waterworks,* 68 Cal., 73.

At common law, when partition was made pursuant to the writ *de partitione facienda,* and the shares were allotted in severalty, and final judgment was given that the partition be holden, firm and effectual forever, nothing further was necessary; for the partition was completely effected. The judgment or law operated to vest in each party a sole estate in his allotment; but nothing further was wrought than to affirm or ascertain the possession. *Cave v. Holford,* 3 Ves., 656.

WESTON *v.* LUMBER CO.

In Indiana it is held that partition proceedings do not settle title, or create a new title, but simply divide into separate shares the land held under existing titles. *Miller v. Noble,* 86 Ind., 528; *Elstone v. Piggott,* 94 Ind., 24. In this latter case it is said: "It results from these settled rules that the decree in partition does not estop the appellant from asserting the title acquired under the deed issued on the decree of foreclosure."

In commenting upon this subject, Mr. Bigelow says in his work on Estoppel (5 Ed.), p. 345: "It does not in modern times constitute a case of privity for the purposes of estoppel to show that one man holds a conveyance of land from another. The modern grantee, unlike a feoffee, acquires the property for himself, and his faith is not pledged to maintain the title of the grantors. A relation of privity is a relation of dependence, not of independence or of superiority. Between the grantor and grantee the recitals of the deed will doubtless be conclusive evidence in a proper case; but the instrument will not for all purposes prevent the grantee from asserting a paramount title which he has acquired from a third person. And this being the case between the grantor and grantee, it follows that the grantee may assert a title which he has acquired paramount to that of such grantor in a contest with one who claims under the same grantor." In support of the text, the author cites a large number of authorities.

The same author, referring to a judgment on a writ of partition at common law and a decree in chancery compelling partition, says: "In neither case does the judgment operate beyond the title held at the time of the suit; it does not affect a title afterwards acquired." Page 79, sec. 4; see, also, *Embry v. Palmer,* 107 U. S., pages 3 to 11.

We think the following additional cases support our views: *McClery v. McClery,* 65 Me., 177; *Macktot v. Dubreuill,* 9 Mo., 282; *Robertson v. Pickerell,* 109 U. S., 608; *Blight v. Rochester,* 7 Wheaton, 534.

In this last case *Chief Justice Marshall* says: "It is contended that he is so restrained, because John Dunlop sold to Hunter, and Hunter has conveyed to the present defendant. It

is very clear that these sales do not create a legal estoppel. The defendant has executed no deed to prevent him from averring and proving the truth of the case. If he is bound in law to admit a title which has no existence in reality, it is not on the doctrine of estoppel he is bound. It is because by receiving a conveyance of title which is deducted from Dunlop, the moral policy of the law will not permit him to contest that title.

"The vendee acquires the property for himself, and his faith is not pledged to maintain the title of the vendor. The rights of the vendor are intended to be extinguished by the sale, and he has no continuing interest in the maintenance of the title unless he should be called upon in consequence of some covenant or warranty in his deed. The property having become by the sale the property of the vendee, he has a right to fortify that title by the purchase of any other which may protect him in the quiet enjoyment of it. No principle of morality restrains him from doing this; nor is either the letter or spirit of the contract violated by it."

We have been unable to find a single case where a grantee of one of the parties to the partition proceedings purchasing the tract allotted in severalty to his grantor has been held estopped to deny title of another party to a different part of the land divided in the partition proceedings from that acquired from the grantor.

Upon the facts of this case as presented by any view of the evidence we are of opinion: (1) that there is no strict estoppel operating in favor of the plaintiff against the defendant in respect to Lots 1 and 4; (2) that the parties did not claim the same tract of land under the same common source; (3) and that if that were so, the defendant has shown an outstanding legal title paramount and has connected itself with it.

His Honor erred in overruling the motion to nonsuit, and the said motion is sustained. Let judgment be entered accordingly.

Error.

CLARK, C. J., concurs in this opinion.

ALLEN, J., concurring: The plaintiff has offered no evidence of possession in himself, or in any one under whom he claims, and it is conceded that his title to the land in controversy depends upon the estoppel of the partition proceeding of 1815.

Do these proceedings prevent the defendant from denying the title of the plaintiff, because of the implied warranty arising from a compulsory partition between tenants in common, or because of an estoppel by the judgment in the proceedings?

There are several principles in regard to compulsory partition at common law that seem to be well settled:

1. Partition could only be compelled as between parceners, and not between joint tenants and tenants in common.

2. If a portion of the estate held in coparcenary was lost before partition, the loss fell equally on all, and they were not to be in a worse plight after partition.

3. That there was an implied warranty and a condition annexed to the partition.

4. In the event of eviction after partition *by suit,* the remedy was upon the implied warranty to have recompense pro rata for the loss; but if the eviction was *by entry without suit,* the remedy was to enter upon the shares of the other tenants and have a reallotment.

5. That by the statutes of 31 Henry VIII and 32 Henry VIII, the right of compulsory partition was extended to tenants in common and in joint tenancy, but that under these statutes the remedy of a tenant in common or of a joint tenant, in the event of eviction, was limited to obtaining recompense upon the implied warranty.

6. That the condition and the implied warranty depended on privity of estate, and if one conveyed his share after partition and his grantee was evicted, he had no remedy against the others, although one who retained his share could, after eviction, have his remedy against a grantee.

The most comprehensive and learned discussion of the subject I have found is in *Sawyers v. Cator,* 8 Hump., 256 (Tenn.), 47 A. D., 608, in which *Judge Turley* treats of it historically and in the light of reason and authority.

The last proposition, which seems to be well sustained, bears directly upon the case before us, because if the condition and the implied warranty depend on privity of estate, and if this privity is broken by an alienation, and the grantee is without remedy upon the condition or the implied warranty, the plaintiff in this case cannot rely upon the implied warranty against the defendant, as he claims title by descent from a grantee of one to whom shares were allotted.

In *Sawyers v. Cator, supra, Judge Turley* says: "But this condition and implied warranty holds only in privity of estate, and, therefore, if either parcener aliens in fee, and the alienee is evicted, the aliening parcener cannot enter on the other allotment, because by the alienation she has dismissed herself from having any part of the tenements as parceners, by thus severing the connection which previously existed (Allnatt on Partition, 159), and my Lord Coke says that when the whole privity of estate between coparceners is destroyed, there ceases to be any recompense to be expected, either upon the condition in law or the implied warranty. Co. Lit., 174a. Yet it is otherwise if the privity be not wholly destroyed; for instance, supposing the alienation to be for years, for life, or entail; then, on account of the reversion, the parcener whose alienee is evicted shall enter on the other part. *Ib.,* 173b. The reasoning which would prevent the aliening parcener from entry or vouching upon the warranty in cases of eviction applies with greater force to the alienee, who is a stranger in blood, and who unquestionably could not enter or vouch."

This is approved in *Smith v. Sweringer,* 26 Mo., 567, as follows: "The doctrine of implied warranty on a compelled partition among coparceners is not free from obscurity in some of its details, but it seems to be a part of that doctrine as known in England and adopted in some portions of this country, that when the privity of estate is destroyed by an alienation, neither the coparcener nor the alienee has any recourse upon the remaining coparceners. (Allnatt, sec. 3; *Sawyers v. Cator,* 8 Hump., 256)."

In 1 Wash. on Real Property, ch. 13, sec. 7, the author declares the same principle: "If, after the partition has been

made, one of the parties is evicted of his property by a para-
mount title, the partition as to him is defeated at his election,
and he may enter upon the shares of the others as if none had
been made, and have a new partition of the premises. But
this right does not extend to the alienee of one of these tenants,
because by such alienation the privity of estate between them
and the holder of his share is destroyed. Nor can the alienee
himself enter upon the shares of the other tenants in such a
case and defeat the partition." And this is quoted with ap-
proval in *Kitchen v. Patrick,* 32 S. C., 433: "But the same
writer (Wash. Real Prop.) says in the very next paragraph:
'This right does not extend to the alienee of one of these ten-
ants, because by such alienation the privity of estate between
them and the holder of his share is destroyed.' Now, unques-
tionably, when the plaintiff bought the interest of the three
Mobleys at the sheriff's sale, he became their alienee, and the
qualification above stated would apply."

When it is remembered that the doctrine of implied war-
ranty arose from the right to compulsory partition among co-
parceners, and that it was imposed upon tenants in common
when the same right was conferred on them, the case of *Weiser
v. Weiser,* 5 Watts, 279 (Pa.), 30 A. D., 318, is also authority
for this position, where the Court says: "The implied war-
ranty in partition between coparceners was only in privity, for
none shall vouch by force of it, except the parties to the parti-
tion, or their heirs, and no assignee. *Bustard's case,* 4 Co.,
121; Litt., sec. 262. And Lord Coke says: 'When the whole
privity between coparceners is destroyed, there ceases any
recompense to be expected, either upon the condition in law
or warranty in law by force of the partition.' 1 Inst., 174a."

*Jones v. Bigstaff,* 44 Am. St. Rep., 245 (95 Ky., 395), is to
the same effect, where it is said: "It is maintained by counsel
for the appellants that an implied warranty of the title arising
by operation of law, or from the statute, upon the making of a
partition by the judgment of a court of competent jurisdiction,
like an express covenant of warranty, runs with the land, and,
therefore, the alienee of one petitioner or one of the tenants in
common, when rightfully evicted, may maintain the action for

contribution. In *Venable v. Beauchamp,* 3 Dana, 321, 28 Am.
Dec., 74, it is said: 'To every partition of land the law an-
nexes an implied warranty, whether expressed in the deed or
not. Each partitioner becomes the warrantor of the other, but,
as said in the case cited, the warranty in such cases is special,
not only with regard to the person or persons who may take
advantage of it, but also with regard to the amount of recom-
pense.' Does the privity exist between the heirs of one of the
tenants, dead, and the surviving tenants, and does it extend
further, and authorize a recovery by the vendee of one of the
tenants after partition and an eviction by a superior title?
Where the tenant, whether holding as a coparcener, joint ten-
ant, or in common, dies, his holding as against his cotenants,
with reference to the joint title to land, passes to the heir,
either for the purpose of demanding partition or exacting con-
tribution where there has been a partition and an eviction.
The privity of estate is not destroyed by the death of one of
the tenants, whose right and title pass by operation of law to
his heirs. Their right to recover, if the ancestor could, is not
doubted, but we cannot well see how the implied warranty
passes to the alienee or vendee. In the well considered case of
*Sawyers v. Cator,* 8 Hump., 280, 47 Am. Dec., 608, *Turley, J.,*
says: 'This implied warranty holds only in privity of estate,
and, therefore, if either parcener aliens in fee and the alienee
is evicted, the aliening partner cannot enter on the other allot-
ment, because by the alienation she has dismissed herself from
having any part of the tenements as parcener, by thus sever-
ing the connection which previously existed.' It is well settled
that parties to a partition, whether coparceners, joint tenants,
or tenants in common, are liable upon an implied warranty of
title, when loss occurs after partition, and that this implied
warranty does not, like an express covenant, run with the land."

It would seem, therefore, that the plaintiff cannot avail him-
self of the implied warranty, and that the question remaining
for consideration is, whether the adjudication in the partition
proceeding estops the defendant to deny the title of the plain-
tiff. We may, I think, eliminate the suggestion at the outset,

WESTON *v.* LUMBER CO.

that if an estate less than a fee simple was claimed by the tenants in common, there is no evidence it is not still outstanding, because the petition was filed in 1815, ninety-eight years ago, and at that time the youngest petitioner must have been 21 years of age, as there is no allegation of nonage, and no party was represented by a guardian *ad litem,* and we may safely assume that one born one hundred and nineteen years ago is now dead, particularly when the plaintiff does not contend otherwise.

The estoppel cannot extend beyond the estate passed upon and adjudicated, or necessary to sustain the judgment, and if that estate was less than a fee simple, and has expired by lapse of time, the plaintiff must fail in his action, as the burden is on him to prove title, and he has shown none, outside of the estoppel.

If so, the real question on this branch of the case is, whether it was adjudicated in the partition proceeding that the tenants in common held in fee simple. Some of the authorities hold that judgments estop, not only as to matters litigated, but also as to those which might have been litigated, while others confine the effect of the judgment to the facts in issue. Both rules are correct, but they are applicable to a different state of facts, and the distinction between the two is clearly drawn in *Cromwell v. County of Sac,* 94 U. S., 352, where the Court says: "In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the

validity of the instrument and the amount due upon it, although it may be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses are not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops, not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action."

Our case belongs to the second branch of the rule, which was applied in *Coltraine v. Laughlin*, 157 N. C., 287, in which the Court quoted with approval from *Capeheart's case*, 125 N. C., 64, that, "A judgment is decisive of the points raised by the pleadings, or which might be properly predicated upon them, but does not embrace any matters which might have been brought into the litigation, or causes of action which the plaintiff might have joined, but which, in fact, are neither joined nor embraced by the pleadings."

If so, the question before us is still further narrowed to the single inquiry as to the estate *actually* litigated and adjudicated in the partition proceedings.

In the consideration of this question it may be accepted:

1. That at common law, as the only unity between tenants in common was one of possession, the judgment in partition had no effect except to sever the possession, and did not operate upon the title.

2. That at common law and now, partition may be had of estates less than a fee simple.

3. That statutes have been passed in the different States which authorize an adjudication of title in partition proceedings.

4. That under the statutes of this State, as they exist now, persons "claiming real estate as tenants in common" may have partition; that upon a petition being filed, the court may appoint commissioners "to divide and apportion such real estate among the several tenants in common"; that the commissioners shall partition the land "among the tenants in common, according to their respective rights and interests therein, by dividing the land into equal shares in point of value as near as possible," and shall make report, which, when confirmed, "shall be binding among and between the claimants, their heirs and assigns," and that these statutes were substantially in force in 1815.

5. That when title is put in issue under the statute, the judgment is an estoppel as to that title.

Mr. Freeman, the author of the work on Cotenancy and Partition, says in 30 Cyc., 310, in reference to the last proposition: "We have hereinbefore shown that, in many of the States, title may be put in issue and determined in suit for partition. We may assume that, even in those States, the title is not put in issue merely by the allegations necessary for a declaration in partition at common law, and that where nothing is known about the pleadings in such a suit, it will be presumed that title was not put in issue by them, nor determined in any judgment based on them. We apprehend, however, that whenever plaintiff alleges himself to be the owner in fee, or of any specified estate, or avers any other ultimate fact under which he is enti-

tled to relief, it becomes the duty of defendant either to concede or take issue with the allegation or averment, and that the judgment in the action will be as conclusive as it would be upon a like issue in any other action."

The Supreme Court of Indiana, discussing the same subject, says in *Miller v. Noble,* 86 Ind., 530: "In ordinary proceedings it is only necessary to allege and prove such a title as entitles the party to a division of the land. The adjudication in such a case goes no further than to declare that such a right is shown as will support partition and to allot the shares to the cotenants entitled to them. If a conclusive adjudication upon the character of the title is desired, issue must be formed directly and fully presenting that question for decision," and in *Green v. Brown,* 146 Ind., 9: "A question of title is not, ordinarily, presumed to be in issue in partition proceedings; on the contrary, the presumption is that title is not in issue."

In the absence of authority, the language of our statute would seem to lead to the same conclusion, that there is no adjudication of title unless directly in issue.

It is not required thereunder that the estate owned shall be alleged, and any persons *claiming* as tenants in common are entitled to partition, and there is no provision that the quantity of the estate shall be defined in the order appointing commissioners, in the report of the commissioners, or in the decree of confirmation.

It is true that the statute says that the report and the decree confirming it "shall be binding among the claimants, their heirs and assigns," but this language was inserted to meet the common-law doctrine that a decree in partition did no more than sever the possession, and is fully satisfied by giving it effect as a conclusive determination of the equality of the division, and of such title as the parties put in issue.

If it means more than this, it will conclude as to titles and estate not litigated, and when it is not necessary to do so to sustain the judgment.

This seems to be the construction adopted by our Court, which says, in *Graves v. Barrett,* 126 N. C., 269: "But in a petition for partition, title is not in issue, unless the defendants

put it in issue by pleading 'sole seizin.' That was not done in this case. The Code, sec. 1892, does not require averment of title as in ejectment, but simply an allegation of seizin and possession as tenants in common, and the seizin and possession of one are that of all"; and in *Lindsay v. Beaman,* 128 N. C., 192: "In the case of deeds, title passes from owner to purchaser, and to constitute color of title must be registered (*Austin v. Staten,* 126 N. C., 783), while in partition proceedings between tenants in common no title passes, only the unity of possession is dissolved and title vests in severalty, notice of which is fully given by the record itself, the common source of title resting undisturbed"; and in *Buchanan v. Harrington,* 152 N. C., 334, citing Cyc., 310: "We apprehend, however, that whenever plaintiff alleges himself to be the owner in fee, or of any specified estate, or avers any other ultimate fact under which he is entitled to relief, it becomes the duty of the defendant either to concede or take issue with the allegation or averment, and that the judgment in the action will be as conclusive as it would be upon a like issue in any other action. The truth is, that a judgment in partition is as conclusive as any other. It does not create or manufacture a title, nor divest the title of any one not actually or constructively a party to the suit, but it operates by way of estoppel; it prevents any of the parties from relitigating any of the issues presented for decision, and the decision of which necessarily entered into the judgment; and it divests all titles held by any of the parties at the institution of the suit."

Applying these principles, it appears that it was not alleged in the partition proceeding that the petitioners and the defendants were tenants in common in fee, nor does it appear that there was any adjudication of title.

The petition alleges that the petitioners and the defendants "are owners as tenants in common," without alleging that the ownership is in fee, and there is nothing in the petition to show whether the interests of the parties were acquired by descent or purchase. No answer was filed, and the order appointing commissioners makes no adjudication as to title or as to the tenancy in common, but simply appoints commissioners "to go

upon the premises mentioned in the petition and lay off the land according to the prayer thereof and make report," and the confirmation of the report, which was an allotment of shares, was by an entry on the docket, "Report confirmed." The word "owner," used in the petition, may be broad enough to include an estate in fee simple, but it also includes estates less than a fee (29 Cyc., 1550), and when associated, as it is, with the words, "as tenants in common," in a petition for partition, and considered in connection with the history of partition, whose primary and chief purpose was and is to sever the unity of possession, and keeping in mind that partition may be had of estates less than a fee, it is reasonable to conclude that the allegation was as strong as the title, and that it was merely sufficient to sustain the proceeding. The conduct of the plaintiff and of his father, under whom he claims, sustains this view, as it appears that neither claimed any interest in the land, nor did either ever exercise any act of ownership over it until a short time before this action was instituted, when an agent of the Richmond Cedar Works suggested to the plaintiff that he held the title to the land, and that his company would pay the expense of the litigation if he would contest the title with the defendant.

The plaintiff testified, among other things: "I am the plaintiff in this case; am 29 years old. My father's name was John Carey Weston; he lived in Norfolk, and died in 1895; his father was named Carey Weston." "I never claimed the lands in controversy until one or two years ago, when a man by the name of Johnson came to me about some property in this same Dismal Swamp, situated in Pasquotank County, and told me that the Richmond Cedar Works had been in possession long enough to give them title, and that I had only a paper title, not actual title; he wanted to buy it. I employed Mr. Gwathmey, the lawyer, to go down and look into it, and he dug up the record as to this property in dispute, and I then entered into a contract with the Richmond Cedar Works, by which they were to pay a part of the expense of the litigation and to receive a part of whatever money might be recovered in this suit. They were to pay a part of the expense and to get one-

third of whatever might be recovered in this litigation, and I agreed to sell the land to them if I should recover it, at a price to be fixed by the number of cords of juniper timber on the land. The Richmond Cedar Works was to pay me for the land, if I could recover it, $1 per cord for all timber measuring over 8 inches in diameter, and 50 cents per cord under 8 inches in diameter, measuring at 18 inches from the ground. They were not to take it unless I could give them a good title. I had never paid any taxes on this land; so far as I know, my father never paid any taxes on this land; so far as I know, my father never claimed this land. My father was 9 years old when my grandfather died."

If, however, the allegation in the petition is sufficient as to ownership in fee, there has been no adjudication of the title.

No issue as to title was raised by answer, and there is no reference in the order appointing commissioners, in the report, or in the decree of confirmation to the quantity of estate held by the tenants in common, and when it is remembered that partition could be had of an estate less than a fee, and that while title could be put in issue and finally settled, it was not obligatory to do so, and that a judgment in partition which simply severs the unity of possession is valid, it seems to follow that the proceeding relied on as an estoppel cannot have that effect, because the title was not adjudicated, and it was not necessary to do so to sustain the judgment rendered. The only facts essential to the validity of the judgment, and necessarily presumed to exist in order to sustain it, are that there was a unity of possession and an equality of division.

"The estoppel of a judgment cannot be extended beyond the particular facts on which it was based; it determines only such points or questions as are sufficient to sustain the legal conclusion that judgment must be given for one or the other of the parties in the particular form and amount in which it was rendered, not additional matters, unnecessary to the decision of the case, although they come within the scope of the pleadings, unless they are actually litigated and passed upon." 23 Cyc., 1290.

If these positions are sound, and the defendant is not bound by. the implied warranty, and the judgment in the partition proceeding only estops as to the unity of possession and the equality of division, the plaintiff has failed in his proof of title, as he has offered no evidence of possession by himself or by those under whom he claims, and no evidence of 'title, except the partition proceedings upon which he relies as an estoppel, and the motion for judgment of nonsuit should have been allowed.

This disposes of the appeal, and it is unnecessary to discuss the validity of the deed of the State Board of Education to the defendant, or of the right of the defendant to rely upon this deed as an after-acquired title.

CLARK, C. J., concurs in this opinion, as well as opinion of BROWN, J.

WALKER, J., dissenting: At May Term, 1815, of the county court of Camden County, plaintiff's assignor and others filed their petition for partition of a large body of land called the New Lebanon estate, containing many thousand acres, and alleged therein that they were "the owners thereof as tenants in common," and prayed for a division of said lands according to the provisions of the statute. In the proceedings they are also called "proprietors of the New Lebanon estate." Partition was decreed, and Lot No. 1 was allotted to Enoch Sawyer, Lot No. 4 to Sawyer and Proctor, and Lot No. 12 to Mills and Josiah Riddick. Unless the decision of this Court upon the effect of the judgment in the partition suit is correct, the plaintiff owns Lots Nos. 1 and 4, and, as appears in the opinion, he is deprived of both by the judgment of this Court, which I think is erroneous. The Court, and I say so most respectfully, has overlooked the provisions of our statute, which, if they had been read in connection with the authorities relied on, and some from other States too, where there is no such statute, would have so explained them as to have led the Court to reverse its conclusion. Coparceners were the only tenants who could compel a partition at common law, and the reason given for this exceptional rule, and also for the warranty implied from the partition, was that parceners had the estate cast upon

them by law, viz., by descent, and as the act of the law does injury to no one, *actus legis nemini facit injuriam,* they were allowed to sever the tenancy and to have an implied warranty, as between themselves, for one parcener could not otherwise force a partition by deed with express warranty, and both partition and warranty would, in that case, depend upon the will of his coparceners. The partition among parceners was effected by writ commanding it to be made, and took effect from the judgment of the court—after the interlocutory order *quod partitione fiat,* the issue of the *breve de partitione facienda,* and the sheriff's return—which judgment was that "the partition so made remain firm and stable forever," and (unlike the decree in chancery in such cases) of itself passed the title to the allotments in severalty. Rawls on Covenants for Title (5 Ed.), sec. 277, note 2. But the right of partition was not extended to joint tenants and tenants in common until by 31 Henry VIII, ch. 1, and 32 Henry VIII, ch. 32; but they did not by these statutes acquire the right of reëntry for condition broken.

With this preliminary statement, we may now consider as to the warranty and condition of reëntry implied from partition. The latter being by writ, of course the warranty was implied from the partition itself, and not from any particular words used. It is familiar that the right to partition existed at common law solely between coparceners, and there was this difference between the warranty and the condition: when a parcener reëntered for condition broken, she defeated the partition in the whole; but when she vouched by force of the warranty, the partition was not defeated in the whole, but she recovered recompense for the part that was lost. But to joint tenants and tenants in common there was by the common law no right to partition by writ; between them it must have been voluntary merely. And hence was passed the well known statute of 31 Henry VIII, ch. 1, which gave to all joint tenants and tenants in common the right to make partition between them by writ, "in like manner and form as coparceners by the common laws of this realm have been and are compellable to do," with the proviso, "that every of the said joint tenants or tenants in common and their heirs, after such partition made, shall and may

have aid of the other or of the heirs, to the intent to deraign the warranty paramount and to recover for the rate, as is used between coparceners after partition made by the order of the common law." It will be perceived that this statute gave the right to the warranty only, and as to joint tenants and tenants in common the condition neither existed nor exists by common law or by statute. The common law, therefore, in cases of partition by writ, gave to parceners a warranty and a condition, and the statute gave to joint tenants and tenants in common warranty alone. But the reason why warranty was implied in a partition between coparceners is not perhaps very clearly stated in the books, and in view of a few decisions the subject would seem to bear some explanation. Rawle on Covenants for Title (5 Ed.), sec. 277.

As between parceners, in case of any eviction by suit upon a paramount title after the partition, the remedy was at common law by vouching the coparcener to assist in deraigning the warranty paramount annexed to the purchase of the ancestor, and in case of failure to have recompense pro rata for the loss, and in case of eviction by entry without suit, by reëntry into the portion of the other coparceners under an implied condition annexed to the partition so to do. There is this difference between the warranty and the condition which the law thus creates upon the partition: When a coparcener takes benefit of the condition, she defeats the partition in the whole, but when she vouches by force of the warranty in law for part, the partition shall not be defeated in the whole, but she shall recover recompense for that part which was lost, to the end that the loss may be equal. For both claim by descent, which is an act of law, and by the law each of them ought to have an equal part of the inheritance of their ancestor; therefore, she shall recover in value but the moiety of what she lost, so that the loss shall be equal, she bearing her portion of it with the sister vouched. Co. Lit., 174a; Allnatt, 156; 4 Rep., 121; *Sawyers v. Cator,* 8 Humphreys (Tenn.), 256.

In *Bustard's case,* 4 Rep., 121, it was adjudged: "That in every exchange, lawfully made, this word *excambium* implies in itself tacite, a condition and a warranty; the one to give

reëntry, the other voucher and recompense, and all in respect of reciprocal consideration, the one land being given for the other; but it is a special warranty, for upon the voucher by force of it he shall not recover other land in value, but that only which was given in exchange, for inasmuch as the mutual consideration is the cause of the warranty, it shall, therefore, extend only ·to land reciprocally given, and not to other land; and the same is law in the case of partition."

Mr. Rawle, at p. 488, thus states the law where, instead of pursuing their remedy, in the case of parceners, by writ, and in the case of joint tenants and tenants in common, according to the statutes, they partition voluntarily by deed:

If the parceners, instead of making partition by writ, as by law they were compellable to do, chose voluntarily to make partition by deed, as of course joint tenants and tenants in common could always do, the estate in coparcenary was, of course, at an end; and as each of them had thus, as in the case of alienation, "altogether dismissed herself to have any part of the tenements as parcener," the warranty was gone. Then when the statute of Henry VIII gave to joint tenants and tenants in common (who before could only partition by deed) the right to have partition by writ "in like manner and form as coparceners," to make the analogy perfect, it provided that after partition each of them and their heirs (but not assigns) should have aid of the other to deraign the warranty paramount and to recover for the rate "as is used between coparceners after partition made by the order of the common law"; and, still to keep up the analogy, it was held, after this statute had been in force for more than a century, that if joint tenants, who thus equally with coparceners were compellable to make partition, chose voluntarily to make partition by deed, the warranty was gone; their right to deraign the warranty paramount and to recover for the rate was their right by statute as an incident to the remedy it afforded; they had not pursued that remedy, and they could not, therefore, have that right. Nothing could be more logically consistent than the whole of this system. And Coke, commenting upon Littleton's statement of the law, puts this case: "Hereupon it followeth, that if one

parcener maketh a feoffment in fee, and after her feoffee is impleaded and vouched the, feoffor, she may have aid of her coparcener to deraign a warranty paramount, but never to recover pro rata against her by force of the warranty in law upon the partition; for Littleton here saith that by her alienation she hath dismissed herself to have any part of the land as parcener, and without question as parcener she must recover pro rata, upon the warranty in law, against the other parcener."

It will be seen from this recital of the law, as taken from Littleton, Coke, Cruise, and the old reports, as well as from the most modern cases and recent authors whose works are of standard authority, exactly what the law is upon this important subject; and I commend the case of *Sawyers v. Cator,* in which *Chief Justice Turley* delivered a learned opinion, to a careful perusal, as containing a most lucid historical statement of the law, and further because he deals with our early law, before the separation of the two States, which, as we know, prevails in Tennessee. The clear net result is that, as incident to a judgment in partition, there is an implied warranty of title. If partition was not compulsory now as to all tenants, but could be had only by voluntary deed, any tenant, by withholding his consent, could require an express warranty, and as his case should not be worse by the laws of compulsion, for this reason he should, in the latter case, have an implied warranty; and so is the law. I have not cited *Carter v. White,* 134 N. C., 466, or any other of our decisions, as yet, because I believe that the law can be shown to be with the plaintiff without them.

It will be noted that in the passage quoted above from Rawle on Covenants, the statute of Henry VIII provided that, after partition, each of the tenants and their heirs (but not assigns) should have benefit of the implied warranty; but while, at the separation of the colonies from England, we adopted these statutes as part of our jurisprudence, the language was amended by Acts 1787, ch. 274, sec. 1; Acts 1789, ch. 309, and Revised Statutes, ch. 85, sec. 1, so as to provide that the "return and appropriations" of the commissioners appointed to make the partition, "when certified and enrolled, shall be binding and valid in, among, and between the claimants, their heirs *and*

*assigns forever* (italics mine) ; and this is our law to this day.
Revised Code, ch. 82, sec. 1; Acts 1868-9, ch. 122, sec. 6; Code,
sec. 1897; Revisal (1905), sec. 2495. And herein is to be found
the provision of our law applicable when this partition was
made, and which the Court has overlooked. I do not doubt
some other courts have·held that judgment in partition only
ascertains the several shares, being a possessory action, and
leaving the title as it found it; but in Freeman on Cotenancy
and Partition, sec. 532, it is said: "The preponderance of the
authorities is probably in favor of the theory that as each co-
tenant who has been evicted after a compulsory partition may
call upon his cotenants to contribute their proportions of his
loss, each of them is, by his obligation of warranty, estopped
from asserting any independent adverse title to the purparties
assigned to the others." And again: "In the conveyance of a
fee-simple estate in lands, no warranty is implied, because there
is no tenure. In partition of land, a warranty is implied, be-
cause of the *privity of estate."* *Doe v. Prettyman,* 1 Hous.
(Del.), 334; *Whittemore v. Shaw,* 8 N. H., 397; *Venable v.*
*Beauchamp,* 3 Dana, 325; *Walker v. Hall,* 15 Ohio St., 362.
"The judgment of partition establishes the title to the land
which is the subject of the partition, and, in an action of eject-
ment upon an adverse possession, or an adverse title existing
at the date of the partition, it is final and conclusive at law
upon all parties to the record, and on all persons holding under
them afterwards." *Clapp v. Bromagham,* 9 Cowen, 569. "One
of the issues which such a judgment ordinarily determines is,
that the parties were in possession of the property, holding it
as cotenants. Hence, a party to a partition suit is estopped
from showing that at the time of the partition he was holding
any part of the premises in severalty adversely to his cotenants,
or that the petitioner had no interest in the property." *Reese*
*v. Holmes,* 5 Rich. Eq., 540; *Muse v. Edgerton,* Dud. Eq., 179;
*Burghardt v. Van Denson,* 4 Allen, 376. Freeman on C. and
P., secs. 530 and 531, is authority for these propositions. He
also says at section 530: "But if a judgment in partition is
not conclusive upon the title of the parties, this is only because
the title was not, according to the law of the State where the

partition was made, within the issues made or tendered in the action. The rule that a judgment is conclusive upon all the issues determined by it is not less applicable to judgments in partition than to judgments in any other form of action," and he puts our State in that class, citing *Mills v. Witherington,* 19 N. C., 433, as the leading case with us; and it does so decide—fairly and squarely—that the judgment in partition is conclusive of the title, and that the parties are by it estopped, as to each other, to deny the title; and not only the parties, but "their heirs and assigns." The opinion in *Mills v. Witherington* was written by *Judge Daniel,* who was profoundly learned in the common law; *Chief Justice Ruffin* and *Judge Gaston* concurring with him. It is a settled precedent, as we will presently see, involving the title to real property in our State, and must be to us the authoritative construction of the common law as enlarged or broadened in its scope by our statute. It approves *Clapp v. Bromagham, supra.* In the course of the opinion, *Judge Daniel* says: "The Legislature, by the act of 1789 (Revisal, ch. 309), gave to tenants in common of real estate the *petition* for partition, in the place of the ancient *writ* of partition. The final judgment at common law in a writ of partition runs thus, *ideo consideratum est quod partitio prædicta firma et stabilis in perpetuum teneatur.* Thomas's Coke, 700. And it was conclusive on the parties and all claiming under them. (*Ibidem,* note 55.) In *Clapp v. Bromagham,* 9 Cowen's Rep., 569, the Court say that the judgment in partition, it is true, does not change the possession, but it establishes the title, and, in an ejectment, must be conclusive. The judgment of the court, adjudging a share to belong to one of the parties, and allotting it to him to hold in severalty, must be sufficient to authorize him to recover it as to all the parties to the record; the judgment is, as to them, an estoppel. The act of 1789 gives the same force to a final judgment in a petition for partition of real estate. It declares that the division, when made, shall be good and effectual in law to bind the parties, their heirs and assigns."

Commenting on that case, *Judge Battle,* who annotated it, says that the doctrine of estoppel, as laid down in it, is clearly

established. He cites *Armfield v. Moore, ibid.,* 168, and then adds that the judgment is binding and conclusive, not only on a party to the proceedings, but on a purchaser from him; and he also cites *Coble v. Clapp,* 54 N. C., 173, which is to the same effect as the *Mills case,* and holds that the judgment, as to the title, "is binding on all the parties to it and their privies," the plaintiff in the suit being a privy in estate by his purchase from one of the tenants. *Mills case* is affirmed in *Latta v. Morrison,* 23 N. C., 149; *Long v. Orrell,* 35 N. C., 123; *Stewart v. Mizell,* 43 N. C., 242; *Turpin v. Kelly,* 85 N. C., 399; *Grantham v. Kennedy,* 91 N. C., 148.

*Chief Justice Ruffin,* in *Long v. Orrell, supra,* says that the estoppel arising out of a partition is conclusive as to the title. In that case one of the parties had conveyed the share "derived by her under the partition." In *Stewart v. Mizell, supra,* the same judge says that the judgment at law is conclusive as to the estate in common in the thing partitioned, and in respect to the share to which each tenant is entitled, and to the parcel allotted to each in severalty. He also says that where the tenants were alleged to be the owners of the land in common, and there is an allotment of shares in severalty, the judgment is conclusive and the partition is in itself a good title, as between the parties to it, in any dispute among them. We have seen by the statute, and the authorities construing it, that it is also binding upon the "heirs and assigns" of the petitioners. To the same purport is *Turpin v. Kelly, supra,* opinion by *Justice Ashe.* The case of *Grantham v. Kennedy, supra,* approves the *Mills case,* and *Justice Merrimon* says: "The decree in the partition proceedings mentioned is conclusive upon all parties to it, and it estops the plaintiffs in this action to deny the title of the defendant, Helen Kennedy, to that part of the land allotted to her, if the said proceedings are valid. *Mills v. Witherington,* 19 N. C., 433; *Stewart v. Mizell, supra; Gay v. Stancell,* 76 N. C., 369."

In the leading case of *Armfield v. Moore,* 44 N. C., 157, *Judge Pearson* says: "Now, in effect, partition amounts to a mutual transfer of title to different parts; that is, one passes his right to that, to be held in severalty, in consideration of a

WESTON *v.* LUMBER CO.

transfer by the other to this, to be held in severalty." And in *Dixon v. Warters,* 53 N. C., 449, *Judge Manly* says: "The slave in question had been a part of the estate of the said Benajah, and was decreed, upon the final hearing of the bill, to belong to the plaintiff. The parties are unquestionably estopped by the decree. The rights of property, as declared under it, are conclusive upon them, until it is reversed; *res adjudicata est, et interest reipublicæ ut finis sit litium.* . . . Where a decree or judgment of court is rendered, declaring rights of property in tenants in common of things capable of division, and a partition is ordered, made and reported, an inchoate right of property is raised, which the subsequent judgment of confirmation perfects. In such case the title has relation back to the division, and starts from that time." And this is the way *Judge Battle* puts it in *Branch v. Goddin,* 60 N. C., 493: "If the plaintiff's testator had been a party to the suit for partition, then he would have been estopped by the record from setting up any title to the slaves."

Speaking of the effect of an estoppel by record (for there are three, the others being by writing or deed and by matter *in pais*), *Judge Bynum* said in *Gay v. Stancell,* 76 N. C., at p. 374: "The ground of the rule, that in a subsequent action you are not permitted to go behind the judgment deciding the same point between the same parties, is that otherwise there would be no end of litigation. It may sometimes operate apparent hardships, but not more so than the statute of limitations and other rules of repose, the necessity and convenience of which all acknowledge. *Duchess of Kingston's case,* 2 Smith L. C., 435 (note)." There are many cases in other jurisdictions to the same effect. The rule, that a judgment is conclusive on all the issues determined by it, applies as well to judgments in partition as to judgments in any other form or kind of actions: *Flagg v. Thurston,* 11 Pick., 431; *Ihmsen v. Ormsby,* 32 Pa. St., 200; *Foxcroft v. Barnes,* 29 Me., 129; *Robb v. Aiken,* 2 McCord's Ch., 125; *Herr v. Herr,* 5 Pa. St., 428; *Burghardt v. Van Deusen,* 4 Allen, 375; *Whittemore v. Shaw,* 8 N. H., 397; *Clapp v. Bromagham,* 9 Cowen (N. Y.), 569; *Forder v. Davis,*

38 Mo., 115; *Doe v. Prettyman,* 1 Houst. (Del.), 334. Hence, whenever the title is in issue, it is settled by the judgment.

In most of the States the action of partition has ceased to be a mere possessory action, and has come to involve the right as well as the possession. After a review of all the authorities, the better and now generally accepted doctrine is that, as each tenant after a compulsory partition, if evicted, can call on his cotenants to contribute their proportion to his loss, each is estopped from asserting any independent adverse title to pur-parties assigned to the others. *Venable v. Beauchamp,* 4 Dana, 321 (28 Am. Dec., 74, and note); *Walker v. Hall,* 15 Ohio St., 362. These cases are exactly in line with *Mills v. Withering-ton,* 19 N. C., 433. In *Venable v. Beauchamp,* 4 Dana, 321, it was held that, "One parcener, joint tenant or tenant in common, cannot purchase in an adverse claim to the land, for his exclusive benefit; still less can he use it to expel his cotenant. And because of the reciprocal warranty, implied by law, as between the parties to a partition, their relation to each other, as to the title, remains the same after the partition as before; so that tenant of one parcel cannot place himself in an attitude hostile to his former cotenants and the common warrantor. To every partition of land the law annexes an implied warranty. And though this warranty is, in some respects, limited, it extends to the whole land, and estops each partitioner from asserting any adverse claim to any parcel of the land allotted to another. A and B are tenants in common. B sells his interest to C by executory contract. A and C agree upon a partition, and deeds of partition are accordingly made by A and B (holders of the legal title), and then B conveys his part to C, in compliance with his previous executory contract; in equity, C shall be considered as standing in B's place precisely and in all respects, subject to the same liability as warrantor to the former cotenant, A, against whom he can set up no adverse claim to the land. Where one or two cotenants purchase an adverse claim to the land, it operates for the benefit of both." See, also, *Jones v. Stanton,* 11 Mo., 433; *Burghardt v. Conrad,* 86 Mass., 374; *Whittemore v. Shaw,* 8 N. H., 393.

*Lord Chancellor Redesdale* said in *Whaley v. Dawson,* 2 Sch. and Lefroy, at p. 367, that partition at law and in equity are different things. The first operates by the judgment of a court of law, and delivering up possession in pursuance of it, which concludes all the parties to it. Partition in equity proceeds upon conveyances to be executed by the parties; and if the parties be not competent to execute the conveyances, the partition cannot be effectually had. And in *Gay v. Parpart,* 106 U. S., 679, the same principle was thus stated: The difference between a judgment and writ of partition at common law, and a partition by decree in chancery as it affects the title, is that the former operates by way of delivery of possession and estoppel, while in the latter the transfer of title can be effected only by the execution of conveyances between the parties, which may be decreed by the court and compelled by attachment. These two cases will explain *Nicely v. Boyles,* 4 Humphreys, 177, opinion by *Chief Justice Turley,* who gave the judgment also in *Sawyers v. Cator, supra.* The case of *Nicely v. Boyles* is also reported in 40 Am. Dec., 638, with a valuable note, which sustains by the great weight of authority the doctrine of *Mills v. Witherington, supra,* and places this State with those that hold the partition to be an estoppel by record, with the same force and conclusive effect as any other estoppel by judgment. "When the same matter is directly in question, and the judgment in the former suit upon the point, it will then be as a plea, a bar, or as evidence, conclusive upon the parties. 2 Philip Ev., 13. So a judgment is conclusive upon a matter legitimately within the issue, and necessarily involved in the decision. 4 Cow., 559; 8 Wend., 9; C. and H. notes, part 2, note 22." *McCall v. Carpenter,* 59 U. S., 302.

There should be no prejudice against an estoppel of this kind, or of any sort. *Judge Pearson* shows the great necessity for the doctrine in the administration of justice, by saying, in *Armfield v. Moore,* 44 N. C., at p. 161: "According to my Lord Coke, an estoppel is that which concludes and 'shuts a man's mouth from speaking the truth.' With this forbidding introduction, a principle is announced which lies at the foundation of all fair dealing between man and man, and without

which it would be impossible to administer law as a system. The harsh words, which the very learned commentator upon Littleton uses, in giving a definition of this principle, are to be attributed to the fact that before his day 'the scholastic learning and subtle disquisition of the Norman lawyers' (in the language of Blackstone) had tortured this principle so as to make it the means of great injustice; and the object of my Lord Coke was to denounce the abuse, which he says had got to be 'a very cunning and curious learning,' and was 'odious'; and thereby restore the principle, and make it subserve its true purpose as a *plain, practical, fair, and necessary rule of law.* The meaning of which is, that when a fact has been agreed on, or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." It is a rule of law founded upon one of its wisest maxims, *Interest reipublicæ ut sit finis litium,* which means that it is the interest of the State that there should be an end of strife and litigation. When a party has had a fair opportunity to assert his rights, neither he nor any one claiming in privity under him should be heard to raise the question again for decision. All the law gives the party is his day in court.

Now the case of *Carter v. White,* 134 N. C., 466, falls naturally under consideration. That case decides two propositions:

1. That the effect of the judgment in the ejectment suit, ascertaining that plaintiffs were the owners of fifty-three fifty-fourths of the land, was to leave the parties in possession as tenants in common, with the interest adjudged by the court upon the verdict; and this is the estoppel referred to by *Justice Connor,* who wrote the opinion, in the extract therefrom which we find in the opinion of the Court in this case, as follows: "In the view which we take of the effect of the partition proceeding, it is not necessary to decide the effect of this estoppel upon an after-acquired outstanding title, and we forbear to express any opinion thereon." He was not referring to the estoppel of the judgment in partition, as might be inferred from the Court's opinion in the case at bar. And here is where I think the Court misapprehends the legal effect of the decision

in *Carter v. White*. Nor is the extract taken from the brief of plaintiff's counsel pertinent or accurate. The counsel had his mind also on the judgment in the ejectment suit, for the effect of that, as an estoppel, is the only question referred to by *Justice Connor* in that extract. We have no such question here, and, besides, defendant's counsel were alluding to what *Justice Connor* said merely to emphasize the fact that there is no outstanding paramount title in this case, and, therefore, it is unnecessary to argue as to the effect of an estoppel, in any view, upon such a title; and that is all. The Court omits all reference, as I think, to the vital part of the decision in *Carter v. White*—pretermits it or overlooks it—and this, it seems to me, has resulted in a misinterpretation and misunderstanding of the case.

2. The second proposition decided in the *Carter case* was, that the judgment in the partition proceeding raised an implied warranty of title as between those who had formerly been tenants in common, and further, that the said judgment also operated as an estoppel of record, and an implied warranty, by way of rebutter, not only against the parties to the suit, but also against their heirs and assigns, and if not against their assigns, certainly as against their heirs. But the statute, Revisal, sec. 2495, fastens the estoppel upon their assigns, as we have seen. The case of *Carter v. White* recognizes the implied warranty, though, in some respects, special, as binding and conclusive upon the parties and their heirs as if it had been express. The effect of a warranty of title is to estop or rebut the party who made it, and his heirs, or the one who has succeeded to his title, from denying the title of the party to whom the warranty was given, and the benefit of the warranty passes to the heirs and assigns of the warrantee, and its burden falls upon the heirs and assigns of the warrantor. The last proposition, that the heirs and assigns of the warrantor are bound by the warranty, even though not named therein, and that the benefit of the warranty passes to the heirs and assigns of the warrantee, was expressly decided in *Wiggins v. Pender,* 132 N. C., 628. The warranty runs with the land. The legal effect of this implied warranty, operating as a rebutter, and of the

"solemn judgment in partition" as an estoppel of record, is clearly) stated by *Justice Connor* in the *Carter .case,* and the statement supported by the highest authority, such as Shep. Touchstone, 2 to 6, 204-6; Rawle on Cov. for Title, 402; *Rich v. Holmes,* 5 Rich Eq., 540; Freeman on Cotenancy, sec. 533; Washburn on Real Property, 723; *Venable v. Beauchamp,* 3 Dana, 321; *Forder v. Davis,* 38 Mo., 107. In the last cited case the Court said: "In reference to this plaintiff, we think the judgment operates as a bar against him at law, not only in respect of the estate and title which he then had, but in respect of any title which he might thereafter acquire. There is here no covenant of warranty by deed; but there is such a thing as an estoppel *in pais,* and by matter of record, which, like an estoppel by deed, may have the effect to pass an after-acquired title, by operation of law. The partition establishes the title, severs the unity of possession, and gives to each party an absolute possession of his portion. A partition is something altogether the act of the parties rather than the act of the law. This binding and conclusive judgment is, in its very nature, very much ·like the old livery of seizin, under a feoffment; which was matter *in pais,* or like a fine, or a common recovery, which was matter of record, and these ancient assurances were of that solemnity and high character that they not only passed an actual estate, and divested what title the party then had, but operated by way of estoppel to pass all future estate and possibility of right which he might thereafter acquire; and we see no good reason why this solemn judgment in partition, which the statute declares shall be firm and effectual forever, should not be allowed to have the same operation against all· parties to the record."

The courts, in construing 31 Henry VIII and 32 Henry VIII, which provided that the judgment in partition should be firm and effectual forever, held that it bound and concluded all parties to the record and their privies in blood; and when our statute, and some of the statutes in other States, extended the effect of it to the assigns of the parties of record, they necessarily became bound in the same manner and to the same extent as the heirs and their privies had been bound under the

statutes of Henry VIII. Of course, as a general rule, no man is estopped by a deed which he takes from another, because the grantee holds adversely to the grantor, but when his grantor has made a warranty or is himself estopped by a judgment with reference to the land, both the warranty and estoppel run with the land, that is, follow it into the hands of whomsoever may purchase it, and the latter becomes as much charged with the warranty and liable upon it, and as much affected by the estoppel, as his grantor. He assumes the burden of both warranty and estoppel when he buys, because they are annexed to and inseparable from the land. *Wiggins v. Pender, supra; Hallyburton v. Slagle, supra;* especially at pages 949 and 950.

*Justice Connor* did not intend, in *McCollum v. Chisholm,* 146 N. C., 24, to change the doctrine so clearly stated in *Carter v. White,* but was merely distinguishing the two cases when he used the language quoted in the opinion in this case. The *McCollum case* presented a decidedly different question from that involved in the *Carter case.* The question there was whether the estoppel of the judgment in the partition, the effect of which was firmly and definitely fixed, would extend to land held by the same parties in common, but not embraced by the pleadings or issues in the partition suit. There could be but one answer to this question; nor was the judgment an estoppel as to the interests of any of the parties but Colonel Simmons, because the extent or quantity of those interests was not within the issue.

The cases of *Harrison v. Ray,* 108 N. C., 215, and *Harrington v. Rawls,* 131 N. C., 39, cited by the Court, have no bearing upon the case. They were voluntary partitions by deed, and no warranty was implied, as each party had the opportunity to demand an express warranty when the division took place, and having failed to do so, the law will not aid him by implying a warranty. He simply waived the warranty by not asking for it. The law aids the vigilant and not those who sleep upon their rights. It is very different when the partition is compulsory and is made *in invitum* or by judicial procedure; and so say all the books.

The expression, that the partition "does not create or manufacture any title," was used by *Justice Manning* in *Jones v. Myatt,* 153 N. C., 229, and he was there alluding to a partition by deed, for he says: "The partition was effected by deed, and we think it was competent to be so done" (p. 229). The cases he cites for the proposition were of the same kind—partitions by deed. The first quoted expression is used elsewhere, and its meaning fully explained. "The truth is, that a judgment in partition is as conclusive as any other. It does not create nor manufacture a title, nor divest the title of any one not actually or constructively a party to the suit; but it operates by way of estoppel." 30 Cyc., 310. The clear effect of the estoppel and the warranty is to prevent any party to the partition suit and his heirs and assigns from setting up a new title, whenever acquired, as against another party to the suit, or his heirs or assigns; and it is not material to inquire whether any new title is "created or manufactured" or not. The question does not turn upon that, but rests, for its solution, upon the warranty and the estoppel, and their legal effect or operation, which is well settled. *Hallyburton v. Slagle, supra; Wiggins v. Pender, supra; Armfield v. Moore, supra; Van Rensselaer v. Carney,* 11 Howard (U. S.), 297; *Hazensick v. Castor,* 53 Neb., 495; *French v. Spencer,* 21 Howard (U. S.), 240; 11 Am. and Eng. Enc. (2 Ed.), p. 403; *Ryan v. U. S.,* 136 U. S., 68; *Cuthrell v. Hawkins,* 98 N. C., 203; *Johnson v. Farlow,* 35 N. C., 84; *Eddleman v. Carpenter,* 52 N. C., 616. The authorities cited by the Court, such as Bigelow on Estoppel (5 Ed.), p. 345; *Blight v. Rochester,* 7 Wheaton, 534, and the other cases associated with it, refer to deeds taken by a party where there was no estoppel or warranty running with the land, and are clearly distinguishable from the case at bar. Bigelow on Estoppel, p. 29, sec. 4, and *Embrey v. Palmer,* 107 U. S., 3 to 11, refer to partitions under the statutes of Henry VIII, and if intended to limit the effect of the judgment in partition, they are in direct conflict with *Carter v. White* and the very numerous authorities cited in its support. In the Indiana case cited in the opinion, the mortgage under which one of the tenants claimed covered the entire interest in the land, and the parti-

tion was, of course, made subject to it, the equitable title being still in the tenants, and sufficient to support the partition. The court was right in holding that there was no estoppel in such a case. We have held the same thing. And so it is with most, if not all of the cases relied on: they have peculiar facts which call for the application of some other principle ·than the one we are discussing, though it may have arisen incidentally and received some notice. In *Forder v. Davis, supra,* it is said: "No party to a partition can be permitted to assert an adverse title for the purpose of ousting another party from the portion allotted to him in the same partition, whether it be acquired before or after the partition is made." *Venable v. Beauchamp,* 3 Dana, 324, is to the same effect, and it is there held that, "One tenant in common cannot purchase a superior outstanding title and afterwards use it for the purpose of expelling his cotenant from his share," and a long list of cases will be found in the notes to that case, as reported in 28 Am. Dec. (Extra Anno.), at p. 83, which decide the same thing. *Jones v. Stanton,* 11 Mo., 433, is a case directly in point. Judge Freeman says that this doctrine is not confined to the original parties, but extends to those holding under them. Freeman on C. and Part., p. 644, citing *Clapp v. Bromagham,* 9 Cowen (N. Y.), 569; and this is so by the express words of our statute as to assigns, and it is so held in *Mills v. Witherington,* citing the same case. "The Act of 1789 gives the same force to a final judgment in a petition for partition of real estate (as an estoppel), for it declares that the division, when made, shall be good and effectual in law to bind the parties, their heirs and assigns." The plaintiff in that case (*Mills v. Witherington*) claimed as does the defendant here, under a grant from the State, but he was held to be estopped.

Why should we go into other jurisdictions to find authorities opposed to our own decisions, if they are in conflict, when the law of real property in this State must be fixed by our own decisions? It is the *lex loci rei sitæ* that governs in such cases. Every State decides the question for itself, and our people have relied on our cases as settling the law of titles. The doctrine of *stare decisis,* therefore, applies most strongly. *Hill v. R. R.,* 143 N. C., 539.

*Justice Hoke* says in *Smith v. French,* 141 N. C., 1, that when our decisions involve a rule of property, they should stand for law to us (*stare decisis*). But the case of *Owen v. Needham,* 160 N. C., 381, is an authority for my contention. It is true that Alexander Jordan, under whom the plaintiff claimed, was not allotted any land in the partition, but he was a party to the suit and was held to be estopped to deny the title of defendant, who was allotted a share, under *Armfield v. Moore,* 44 N. C., 161, with a strong intimation by the Court that if Alexander Jordan had been a party to the partition in his own right, claiming as a tenant in common and not in right of his wife, the case of *Carter v. Wright, supra,* would apply and also estop plaintiff. It must be observed that in *Owen v. Needham* plaintiff was claiming, by purchase from Alexander Jordan, under a grant from the State, as an outstanding superior title; and yet he was held to be estopped. It can make no difference in this case, or in that, how the party is estopped, whether under *Carter v. White* or *Armfield v. Brown.* One estoppel is as good and effective as the other, and just as conclusive and far-reaching.

It is suggested, however, that the title should have been actually litigated in the partition suit, in order to constitute an estoppel upon the parties or their privies, or to be a *res judicata.* This is contrary to the universal and elementary rule of pleading and procedure, for it is well settled that, "A judgment by confession or consent may constitute *res judicata,* for such a judgment is quite as final and conclusive between the parties and their privies as any other judgment, and a judgment by default is just as conclusive as to the rights of the parties before the court as a judgment on issue joined, and consequently the doctrine of *res judicata* applies to such a judgment with the same validity and force as to a judgment rendered upon a trial of issues." It is, therefore, not necessary, says a great law writer on this subject, that the judgment should have been awarded upon the decision of an issue, for where it is given for want of a plea, which is judgment by *nil dicit,* or where it is one by *non sum informatus,* or by confession, or by default, the conclusiveness of it is the same as if the fact had been

actually contested by plea or traverse. Stephen on Pleading (9 Am. Ed. by Heard), pp. 109 and 195. This he calls estoppel by record. There was no answer in *Mills v. Witherington, supra,* and consequently no actual litigation of the title and no specific reference to it in the pleadings. And there is another principle equally as well established in pleading, that whatever is necessarily implied is traversable as much as if it were expressed, and this was said in regard to the question of sole seizin. Stephen on Pl., marg. p. 196. In this case the parties to the former suit alleged that they were "owners as tenants in common." It was not necessary to allege that they were "owners in fee," as the law implied such an estate, nothing to the contrary appearing. It will be found that the authorities hold that the usual meaning expressed by the word "owner," without any qualification, is the person who has the absolute title to the property as distinguished from one having only a limited interest, though the latter may be considered the owner if the context shows that the word was so used. Standing alone, it means, in law, and especially in pleading, the one who is the real owner thereof against the world at large—the one whose right and title thereto are paramount. This is the natural and obvious meaning, without resorting to subtle and forced constructions for the purpose of either limiting its import or extending its operation. The Court in *Directors v. Abila,* 106 Cal., 355-363, said that "where a limited signification was not indicated, the word 'owner,' in its general sense, means one who has full proprietorship in and dominion over property. In Bouvier's Law Dictionary, it is said that: 'The word "owner," when used alone, imports an absolute owner.' In *Johnson v. Crookshanks,* 21 Or., 339, which was an action of ejectment, the point was as to the meaning and sufficiency of an averment in the complaint that plaintiff was 'the owner' of the demanded premises. The Court held it sufficient, and said: 'This is undoubtedly an allegation of title in plaintiff. The word "owner" has a definite meaning, and is one who has dominion over a thing which he may use as he pleases, except as restrained by law or by agreement. (Anderson's Law Dictionary, title "Owner.") The precise meaning, perhaps, depends upon

the nature of the subject-matter, and the connection in which it is used; but when applied to real estate, without any qualifying words, in common as well as legal parlance, it *prima facie* means an owner in fee.' (Authorities cited)." So in *Atwater v. Spalding,* 86 Minn., 101, the Court held that to require the particular estate to be alleged in regard to the land would be altogether too narrow and technical for pleading, the word "owner" having a comprehensive meaning. It then says: "Owner, according to Black's Dictionary, is the person 'in whom is vested the ownership, dominion, or title of property.' Webster defines an 'owner' as one who owns; a rightful proprietor; one who has the legal or rightful title, whether he is the possessor or not." It includes the highest as well as the lowest or most precarious kind of title, and is referable to the former, unless some inferior one is designated. *McLain v. Maricle,* 60 Neb., 353; *Turner v. Cross,* 83 Tex., 218; *Hardin v. R. R.,* 113 Ga., 357; *Smith v. Ferris,* 6 Hun. (N. Y.), 553; *McArthur v. Clark,* 91 Am. St. Rep., 333; *Wright v. Bennett,* 4 Scammon, 258; *R. R. v. Matthews,* 16 Minn., 341; *Merritt v. Kewanee,* 175 Ill., 537; *Bowen v. John,* 201 Ill., 292; *Garver v. Insurance Co.,* 69 Iowa, 202; *Gravlee v. Williams,* 112 Ala., 539; *Ruggles v. Nantucket,* 11 Cush., 433. The Court said in *Frank v. Arnold,* 73 Iowa, 370, that "there is no distinction between 'ownership' and 'title,' as applied to real estate, but the 'owner' is the one who has the title"; and in *Bowen v. John, supra,* that "the term 'owner,' when applied to real estate, means one holding an estate in fee simple," citing *Insurance Co. v. Manufacturing Co.,* 1 Gilm., 236. See 26 Am. and Eng. Enc. (1 Ed.), p. 567, and note.

But even if the word "owners" had not been used in the petition for partition, and the allegation had simply been that they were tenants in common, it would just as well have involved the title, for that is exactly what *Mills v. Witherington,* 19 N. C., 433, decides. I have examined the record of that case, and found that the petition alleged merely that the parties were tenants in common, without any suggestion of ownership or title of any kind, otherwise than was implied by law from the allegation as made. *Judge Gaston* so states the case. A grant for

that part of the land which had been assigned to the defendant Witherington in severalty was obtained, and plaintiff's lessor claimed under it. The Court held, as we have already shown, that "while judgment in partition does not change the possession, it established the title, and, in ejectment, must be conclusive on the parties and all claiming under them." This, it is said, was so at common law. And the Court adds: "The judgment is, as to them, therefore, an estoppel, and the act of 1789 gives the same force to a final judgment in a petition for partition of real estate. It declares that 'it shall be good and effectual in law to bind the parties, their heirs and assigns.'" It has been settled in the law too long for any question to be now raised, that estoppels by record or judgment are binding and conclusive, not merely on the original parties, but that privies in estate, as the feoffee, lessee, and so forth; privies in law, as the lords by escheat; tenant by the curtesy; tenant in dower, the incumbent of a benefice, and others that come in by act in law, in the *post,* shall be bound by and take advantage of estoppels. Co. Lit., 352a; *Outram v. Morewood,* 3 East, marg. p. 353.

There is another view of this case. In the partition, it was adjudged that the parties were the owners of the land as tenants in common. This much is conceded, and it can make no difference whether they were tenants in common in fee, for life, or for years; the estate, whatever it was, is still outstanding, as there is no evidence that it is terminated. If they were the owners of any estate at that time (1815), the State was not the owner, but it had parted with its title, for no person can be said to own land unless he has, in some way, by grant or otherwise, acquired the State's title. It is impossible for it to be so. The title being out of the State, it follows that the State could not, by the act relied on, pass title to the Board of Education, without office found, or by any proceeding which deprived the owner of his land without a hearing, or without due process of law, unless we are disposed to overrule *Parish v. Cedar Co.,* 133 N. C., 478, and *Lumber Co. v. Lumber Co.,* 135 N. C., 743, which distinctly held that a similar act was unconstitutional and void, and that the Legislature could not, by such a statute,

divest the property of the citizen. The cases were well consid-
ered, decided by a unanimous Court, and there is absolutely no
reason why they should not stand as the law. To reverse them
would unsettle innumerable titles in the State, not only of
swamp, but of other lands.

The result is that, (1) Defendant is rebutted by the warranty
to claim the land under his deed from the Board of Education,
if otherwise it would convey a paramount title. (2) That he
is estopped by the judgment to assert any such claim. (3) That
as it has been adjudged in the partition proceeding that the
parties thereto were the owners, as tenants in common, of the
land in 1815, the State could not transfer that ownership to
the Board of Education without giving the parties notice and
an opportunity to be heard, even if the taxes on the land had
not been paid; and the act of the Legislature purporting to do so
is, therefore, inoperative, it being void. (4) That defendant, as
assignee of Lot No. 12, stands in no better position than the
original owner, as the statute operates not only upon the par-
ties, but also upon their "heirs and assigns."

I conclude that to enter a nonsuit would be erroneous, and
that there is no error in the defendant's appeal. A new trial
should be granted in the plaintiff's appeal, as the judge should
have charged the jury that the testimonial clause in the deed,
reciting that the seal had been affixed to it, was not merely evi-
dence of the fact, but raised a presumption that the seal was
actually affixed. *Heath v. Cotton Mills,* 115 N. C., 202.

Hoke, J., concurs in dissenting opinion.