Ruffin, C. J.
 

 Henry Cobb died intestate, in Bertie, in 1843, seized in fee of four tracts of land in that county, having had eight children, of whom several survived him, and of each of those who were dead, there was issue living. In April, 1844, the children and grand children of the intestate, united in a petition in the Court of Equity, for the partition of the lands among them: and, in the petition each tract was particularly described, and it was stated that the said land descended from the intestate, Henry Cobb, to his children and grand-children, the petitioners, in fee; and then the share therein of each of the petitioners, was particularly set forth ; that is to say, that each of the surviving children was entitled to one eighth part thereof, and that each of the grand-children was entitled to a certain aliquot part of one-eighth of the whole, as representing his or her parent. The petition then prayed for partition among the
 
 *243
 
 parties, so that a share should be allotted to each of the petitioners in severalty, according to their respective rights, as therein set forth; and, representing further, that the land was of’so little value, and the number of shares so many— fourteen in all — that actual partition could not be made without injury to_,the parties. The petitioners prayed, also, that the Court would decree a sale of the lands, and a division of the proceeds among the petitioners, .in the proportions, and according to their said several and respective rights.
 

 Upon the petition, the sale was decreed, as prayed for, and was subsequently made by the clerk and master, at the price oí $841, and reported to the Court, and confirmed without objection: and, in March 1845, the clerk and master was ordered to collect the money, and pay it to the parties, according to their several rights, as set forth in the .petition. The master got in the money, and distributed it accordingly : and paid to each his or her share, except such as belonged to infants and
 
 feme
 
 coverts, and those portions were retained by him, to be invested and secured for the benefit of those persons, under the direction of the Court.
 

 The present bill was filed in March 1848, by four of the intestate’s children, or .those representing such of them as were dead, against the other four children or their heirs. It ■states, that the intestate had, in his life time, settled on each of his four children, respectively, who or whose heirs are defendants, lands equal in value, at least, to one-eighth part of the lands so settled in his life, .and also of those of which he so died seized: and that the .children, .on whom the lands were settled, were not entitled to any part of the land descended, or, at all events, to only as much thereof, as would make the estates of all the children equal. And the .bill charged, that those children never accounted [for any part of the land settled on them respectively, and that, without having done so, each received a lull share sof the
 
 *244
 
 proceeds oí the descended land, under the decree made on the petition. The prayer is for a discovery, as to the lands settled on the several defendants or their parents, by the intestate, and that a value may be set on them, and the rights of all the heirs of the intestate adjusted upon the basis, that each child, thus provided for, was entitled only to such portion of the proceeds of the descended land, as would make him equal with the other children, and that such of them as have received more, may be decreed to pay in the excess, that it may be duly divided among those children on whom nothing was settled.
 

 The defendants put in a demurrer, which was over-ruled in the Court below. They then put in an answer, and admit certain lands to have been settled on them respectively by their father, and that they were not considered in the division oí the lands' descended at their father’s death. They say, that those provisions were well known to all the parties, when the petition was filed, and the proceedings had under it: and that, in consequence thereof, the children, who had been provided for., would not bid for the other land, against the children not provided for, but allowed them to become the purchasers, at an under value, in order to place them all nearer on an equality. The answer, then, insists on the former suit and decree, as conclusive of the rights of the several parties, as therein set forth and established.
 

 The bill cannot be sustained. A judgment at law, in partition, is conclusive, in respect to the thing in which the parties had an estate in common, and also in respect to the share to which each was entitled, and to the parcel allotted to each as his share in severalty.
 
 Mills
 
 v.
 
 Witherington, 2
 
 Dev. and Bat. 433. In that case, it was held, that, where land belonging to one of the parties in severalty, was stated in a petition for partition, to be a part of the land which belonged to all the parties in common, and was allotted in
 
 *245
 
 severalty, to one of the petitioners, as his share of the whole, the judgment was conclusive, and the partition was, in itself, a good title, as between the parties to it. If, instead oí an application to the Court of Equity for a partition by a sale, these parties had proceeded at law for a partition, and one had been adjudged, giving to each child an equal share, specifically, of all the land, as having descended from their father to all of them equally, the case cited deter mines that the partition would have been final. For, by the act of descents, where a child is provided for, all the lands of which the parent dies seized, does not descend to all the children : but it descends to them as tenants in com mon, and only “ so much.of the lands shall descend to such child, so provided for, as will make the estates of the children equal.” Therefore, when the petition stated, that the descended land descended to all, equally, the form, as in the case cited, admitted of record, that land, which in fact belonged exclusively to them, was vested in the whole, in fee: and the judgment of the Court, founded on that admission in the pleadings, would be necessarily conclusivé. Not less so is the decree of the Court of Equity, upon facts found and declared, and a
 
 fortiori
 
 on those admitted by the parties. If it were not so, there would be no end to litigation in this Court. Indeed, the decree in this cause could no more be regarded as final, than that which the present bill seeks to overturn, upon the ground merely, that it was not in itself strictly right. This is not an attempt to review the decree: for, it is just what it ought to have been, and what the Court was obliged to pronounce, according to the concurring allegations of all the parties. Nor is there any allegation now, that some of the parties formerly practised any arts to deceive the others, as to the facts or law, on which their rights depended, or that the facts were not fully known to every one of them. There is nothing of the kind in the bilí: and,indeed, the answer states, that there was
 
 *246
 
 not even a mistake in respect to the facts. So, the sole ground, on which the-relief is sought, is, that the former decree, though right, according to the facts then agreed by the parties, was not right, according to the facts then truly existing. Consequently, a decree, in this cause, founded on a declaration, that the plaintiffs were not at all provided for by the father in his lifetime, might by and by be overset upon evidence, that, in fact, the father did settle lands on the present plaintiffs, or did not settle them on the present defendants : and thus neither facts, found or admitted, would be deemed established, nor adjudications, resting on them, be respected as right or conclusive.
 

 Per CüRIam. " Bill dismissed, with costs.