W. D. BOWEN v. JOHN L. ROPER LUMBER COMPANY.

(Filed 2 November, 1910.)

1. **Deeds and Conveyances—Description—Calls—Natural Objects— Rules of Interpretation.**

Among the rules established for the correct placing of land boundaries, and more directly pertinent to the facts of this case, are (*a*) that "none of the calls in the deed may be disregarded when they can be fulfilled by any reasonable way of running the lines, which will be deflected only when necessary to give effect to the intent of the parties as expressed in the instrument." (*b*) Natural objects called for in a patent or deed, sufficiently placed and identified, as a rule, control course and distance, and this last rule very generally obtains unless the facts and accompanying data clearly show that its application would lead to an erroneous conclusion.

2. **Same—"Islands."**

When a grant begins at A., a known and established point, and the course and calls of the same are admitted to a point F., "a pine on Beech Island," and the last call of the grant is "N. 51, E. 1340 poles including the islands" to the beginning; and there are within the course several islands of firm land adjacent to an old shore line, which the parties evidently had in view; and in order to "include the islands" jt was required to run the line N. 51, E. (54 by reason of the variation of the magnetic needle) 1060 poles and then 653 poles to A. the beginning. *Held*, this was the correct placing of the last call of the grant, though the closing line is thereby increased a distance of 375 poles. This interpretation follows the course of the grant for the first and greatest portion of the distance and includes the islands, and thus is more in accord with the two principles stated, that (1) of recognizing more of the calls of the grant; (2) taking proper regard for the natural objects, in this case, the islands.

APPEAL from *Ferguson, J.*, at the January Term, 1910, of WASHINGTON.

Civil action trespass q. c. f. It was admitted or established that the land claimed by plaintiff was embraced within a grant to Jos. Dwight, dated March, 1758, and that the eastern boundary of plaintiff's land was coterminous with the eastern boundaries of this grant. The boundary of the Jos. Dwight grant was as follows: "Beginning at a pine in the mouth of the Mid-

dle Branch; thence W. 60 poles to a white oak; thence south 45 W. 700 poles to Colo. Robt. West's corner tree; thence E. 40 poles on the said West's line south 45 W. on the said line 640 poles to the said West's corner tree; thence S. 45 E. 60 poles to a pine in the Beech Island; thence north 51 E. including the islands 1340 poles to the first station, dated 3 March, 1758." The plot, so far as required to elucidate and explain the controversy and the discussion thereon, is as follows:

The cutting of the timber, by defendant, within the boundaries F G A was admitted, and it was submitted for decision, that

if the eastern boundary, or closing line, of the Jos. Dwight grant, was the line F A, the cutting of the timber was not wrongful, but if the boundary was correctly shown by the line F G A, then the defendant had wrongfully trespassed on plaintiff and he was entitled to recover. The court being of opinion, with the defendant, plaintiff excepted, submitted to a judgment of nonsuit and appealed.

W. B. Rodman, Ward & Grimes for plaintiff.
W. M. Bond, Sr., and A. O. Gaylord for defendant.

HOKE, J., after stating the case. The beginning corner of the Jos. Dwight grant, to-wit, a pine tree at the mouth of "Middle Branch" (marked A on the plat), and the subsequent lines and corners were admitted or clearly established to the fifth call, "a pine on Beech Island," indicated on the map at F, and the question at issue depends, as stated, on the correct location of the closing call of the grant, "thence N. 51 E., including the islands, 1340 poles to the first station."

It was recognized, at an early period, with us, that of necessity certain modifications were required in the principles of land boundary and the evidence usually received to establish it, a necessity born chiefly of the rugged and unsettled conditions of the country and the methods frequently pursued in making the original surveys. In the notable case in our reports of *Cherry v. Slade,* 7 N. C., p. 82, *Chief Justice Taylor,* delivering the principal opinion, refers to these conditions and the decisions of the courts applicable to them as follows: "The decisions which have taken place in this State on questions of boundary have grown out of the peculiar situation and circumstances of the country, and have, beyond the memory of any person now alive, been moulded to meet the exigencies of men and the demands of justice, where the mode of appropriating an almost uninhabitable forest, had involved land titles in extreme confusion and uncertainty. In many cases surveys were not otherwise made than upon paper; and in many others, when an actual survey was made, the purchasers from the lords proprietors were in danger of losing their land by an inaccurate description of them, the omission of whole lines, and the mistake of courses." The

learned judge then proceeded to lay down certain rules on questions of boundary and refers to them as long established and approved by the courts as best promotive of right and "effectual for the just determination of almost every case that has arisen." They are as follows:

"That whenever a natural boundary is called for in a patent or deed the line is to terminate at it, however wide of the course called for it may be, or however short or beyond the distance specified.

"2. Whenever it can be proved that there was a line actually run by the surveyor was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in the patent or deed.

"3. When the lines or courses of an adjoining tract are called for in a deed or patent, the lines shall be extended to them, without regard to distance, provided those lines and courses be sufficiently established, and no other departure be permitted from the words of the patent or deed than such as necessity enforces or a true construction renders necessary.

"4. Where there are no natural boundaries called for, no marked trees or corners to be found, nor the places where they once stood ascertained and identified by evidence, or where no lines or courses of an adjacent tract are called for; in all such cases, we are of necessity confined to the courses and distances described in the patent or deed: for however fallacious such guides may be, there are none other left for the location."

These rules have been recognized as sound and applied by the Court in many cases on this subject and particularly the first as more directly relevant to the questions presented on this appeal in *Mitchell v. Welborn,* 149 N. C., 347; *Whitaker v. Cover,* 140 N. C., p. 280; *Redmond v. Stepp,* 100 N. C., p. 217; *Dickson v. Wilson,* 82 N. C., p. 487. A rule that is never departed from unless accompanying data and relevant facts make it perfectly clear that its application would lead to an erroneous conclusion, as in the recent case of *Lumber Company v. Hutton,* 152 N. C., p. 537. Another principle, recognized as applicable

to these questions of boundary, is "that in determining the boundary of land none of the calls must be disregarded when they can be fulfilled by any reasonable way of running the lines which will be deflected only when necessary to give effect to the intent of the parties as expressed in the instrument." *Miller et al. v. Bryan,* 86 N. C., p. 167.

In our opinion a correct application of the principles stated requires a reversal of his Honor's judgment in the present case, to-wit, that the closing line should be run N. 31 E. 1395 poles to the beginning corner at A, from F to A. If this last call contained only the words "N. 51 E. 1340 poles to the first station," the conclusion reached by his Honor would be clearly correct. The beginning corner at A, being a natural object, or being a point fixed and established, would control the course called for in the grant N. 51 E. and the line F A would therefore be the true line. But the call contains in addition a most important provision N. 51 E. *"including the islands."* It appears that this tract Long Acre, embraced within the boundary of the Jos. Dwight grant was composed of a long narrow strip of firm land evidently an old shore line and just east of it was an extensive swamp containing a lot of timber and the usual swamp growth and also several islands of firm land adjacent to this old shore line and by running the last call according to the course stated in the grant, N. 51 E., marked 54 on the plat, a change required by the variation of the magnetic needle, to G and thence to the beginning would include the islands and close the survey to the beginning as required by the grant. This method of location extends the length of the closing call about 375 poles, but it runs the course called for in the grant, and it includes the islands adjacent to the shore, evidently a purpose that the parties had in view, and this, we think, comes nearer the requirement, that all the calls of the grant must be recognized where it can be reasonably done, and is in accord with the position "that a natural object when called for (here the islands) will control course or distance." This conclusion also finds support from the fact in evidence that the surveyer found an old marked line from F to G. The case before us comes more directly within the decisions of *Clarke v. Wagner,* 76 N. C., p. 463; and

*Long v. Long,* 73 N. C., p. 370. *In Clark's case* it was held: "Although natural boundaries control course and distance and require a straight line from one corner to another, yet where the grant has such other description by natural boundaries (as the boundary of an island) as to require a departure from a straight line, the latter will control." In *Long's case* it was held: "Where in a deed the land conveyed is described as follows: Beginning on the fifth corner of the last mentioned 300-acre survey, running thence a direct line to the Ramsey Ford, so, however, as to include the cleared part of *Shingle Island;*" the fifth corner, Ramsey Ford and Shingle Island are established points, and a direct line from the fifth corner to Ramsey Ford will not touch Shingle Island. *Held,* that a direct line from the fifth corner to Shingle Island, so as to include the cleared part thereof and thence to the ford, was the proper boundary of said land, and *Settle, Judge,* delivering the opinion, said: "We think our decisions establish beyond doubt, that we shall go from the fifth corner in a direct line to Shingle Island, so as to include all the cleared part thereof, and thence to the ford. This construction comes nearer giving force to all parts of the description than any other that can be adopted, and is in consonance with the general principles of our decisions. *Cherry v. Slade,* 3 Murphy, 82; *Shultz v. Young,* 3 Ired., 385." These cases are, we think, decisive. For the error indicated the judgment of nonsuit is reversed and the cause will be proceeded with in accordance with law.

Reversed.