J. E. FOWLER ET AL. v. D. F. COBLE ET AL.

(Filed 16 April, 1913.)

**Deeds and Conveyances—Destruction of Former Call—"At or Near"—Certainty of Description—Instructions — Burden of Proof—Course and Distance.**

In an action of trespass wherein the divisional line between the contesting parties is called in question, it appears that in the former deeds in plaintiff's chain of title, one of the calls is to a certain house, which had been destroyed subsequently to the making of the deed from the plaintiff's immediate grantor; and in the last deed the call is made to a stake "at or near the place where the house" formerly stood: *Held,* the destruction of this house could not affect the call or the description in the plaintiff's original deeds; and it was not error for the judge to instruct the jury to find for the plaintiff, if the line ran to the house, leaving out the words "at or near the place," etc., with the burden on the plaintiff of showing its location; and upon his failing to do so, the course and distance would control.

APPEAL by defendants from *Ferguson, J.,* at May Term, 1912, of SAMPSON.

*H. A. Grady for plaintiff.*
*Faison & Wright and J. D. Kerr for defendant.*

WALKER, J. This was an action to recover damages for a trespass on land and to enjoin the cutting of timber. Verdict and judgment for plaintiffs, and defendants appealed. The land originally belonged to James Harrington, and was partitioned among his heirs. Plaintiffs claimed to have derived title to Lot No. 9 in the division by judicial proceedings and

mesne conveyances. The point in controversy was the true location of the dividing line between the parties, defendant owning the land adjoining Lot No. 9. The description of the line in the original partition of 1814 between Harrington's heirs was, "thence (that is, from C on map) south 60 east 180 poles to a stake at the (Harrington) house," which plaintiffs contended ran from letter C on the map to letter H, the house being at H, but they were willing for the line to be run to letter G, thereby about equally dividing the *locus in quo* between the parties. The jury located the line C·G as the true one. Some of the deeds in plaintiff's chain of title, subsequent to the Harrington partition in 1814, described the line as running "thence (that is, from C on map) south 60 east 180 poles to a stake at or near the place where the house of James Harrington, deceased, formerly stood," and defendant insisted that the last part of the call, "to or near the house," was too uncertain or indefinite to control, and the line should be run by course and distance, relying upon *Harry v. Graham,* 18 N. C., 76; *Cansler v. Fite,* 50 N. C., 428; *Mizzell v. Simmons,* 79 N. C., 183; *Brown v. House,* 118 N. C., 872. If this be so, there was no trespass, as the line would be from C to D on the map, the southern boundary of the *locus in quo*. Plaintiffs contended that the call for the house, though now gone, was sufficient to control course, as the place where the house once stood had been fully identified. The court charged the jury that if, upon the evidence, they found where the Harrington house, called for in the partition and deeds, stood, they would run the line to that place, the burden being upon the plaintiff to satisfy them where the house stood in 1814, at the time of the Harrington partition, when the lot was first described by metes and bounds; and if plaintiff had failed to so satisfy them, they would run the line by course and distance, south 60 east 180 poles, to the other boundary. There was evidence to support this charge. We do not think the inadvertent change in the call, from "south 60 east 180 poles to the house" to "south 60 east 180 poles to or near the house," effected any change in the boundary. It was admitted, and if it had not

been, it clearly appeared, that all the deeds conveyed Lot No. 9 of the Harrington partition, which had well defined metes and bounds, the call on the disputed line being for the house. This was sufficient to control course and distance, and it made no difference that the house had been removed. How could this change the boundary? If the house controlled when it was there, it did so ever afterwards. It would be very strange if a call for a tree would be governed by course and distance merely because the tree had ·died and disappeared, if the place where it once· grew could be ascertained. The call for a tree is a very common one, and if this rule prevailed, our boundaries would be constantly shifting. We find it stated by *Chief Justice Taylor*, in *Cherry v. Slade,* when giving the rules on questions of boundary and as a part of the fourth rule, that "where there are no natural boundaries called for, no marked trees or corners to be found, *nor the places where they once stood ascertained and identified by evidence* . . . we are of necessity confined to the courses and distances described in the patent or deed." (Italics ours.) · This was approved in *Bowen v. Lumber Co.,* 153 N. C., 366. See *Guano Co. v. Lumber Co.,* 146 N. C., 187. It being, therefore, established that the original call must go to the house, or its site, the house having been removed, all the subsequent deeds conveying the same tract of land, that is, Lot No. 9, must have the same boundary in answer to the call, though the words "at or near" are used, for it is the same as if the boundaries of Lot No. 9, as contained in the report and judgment in the partition proceeding, had been inserted in the deeds. This doctrine is fully discussed in *Ipock v. Gaskins,* 161 N. C., 673. The more certain description, as shown in the partition, will prevail over that which is less certain. The deed corrects itself, for it is Lot No. 9 which is conveyed, and the description of that is fixed by the language to be found in the partition proceeding. The following admission appears in defendants' brief: "It appeared from the evidence that all this land and the adjoining lands had once been the lands of the James Harrington estate, and had been divided in 1814, and that the land sold in the special proceeding to Owens (the plaintiff) was Lot No.

9 in this old division." Dock Owens claimed by assignment from John E. Fowler, who bought the lot from Butler and Kerr, commissioners, who sold it under a decree in a partition proceeding between the heirs and devisees of Daniel Melvin, who purchased from Philip Harrington, to whom Lot No. 9 was assigned in the division of the lands of James Harrington. The reason for using the words "at or near" was that the house was gone, and the parties were, at that time, uncertain as to its true location; but whatever the reason may have been, it is manifest that it was intended to convey Lot No. 9, the boundaries of which were unchangeably fixed by the original partition. The other exceptions are untenable.

No error.