MRS. MAMIE V. GREER v. S. W. HAYES AND WIFE, LEILA B. HAYES.

(Filed 25 March, 1942.)

**1. Boundaries § 5—**

When plaintiff contends that the courses and distances called for in her deed should be run from an admitted or established corner with allowance for variations in the magnetic pole computed from the date of a former deed, it is the duty of the court to determine whether plaintiff's evidence is sufficient to invoke this exception to the general rule, and, if so, to charge the jury under what circumstances variations in the magnetic pole should be computed as of the date of the former deed and as to what variation should be allowed.

**2. Boundaries § 1—**

It is the duty of the trial court to instruct the jury as to what the true boundary line is, and it is the province of the jury to locate the line.

**3. Boundaries § 5—Held: Plaintiff failed to show that she was entitled to have courses run with variation in magnetic pole computed as of date of former deed.**

In this processioning proceeding plaintiff located only the beginning point by natural object and contended that the courses and distances therefrom should be run in accordance with her deed with allowance for variations in the magnetic pole computed as of the date of a prior deed, under her contention that the description in her deed was copied from the prior deed. Plaintiff failed to introduce evidence warranting an inference that the description in her deed was copied from the prior deed or that there was a contemporaneous survey at the time either deed was executed. *Held:* Plaintiff having failed to bring her case within any one of the exceptions to the general rule, the court should have charged that the courses and distances should be run in accordance with plaintiff's deed from the beginning point as located by the jury.

**4. Boundaries § 10: Adverse Possession § 17—**

In a processioning proceeding the burden is upon plaintiff to establish the true dividing line according to her paper title, and if defendants assert title by adverse possession to any part of plaintiff's land as so established, a separate issue as to adverse possession should be submitted with the burden on defendants to prove such title notwithstanding plaintiff's record title.

APPEAL by defendants from *Clement, J.,* at November-December Term, 1941, of CALDWELL. New trial.

Processioning proceeding to fix and determine the true boundary line between the lands of the plaintiff and the lands of the defendants.

There was a verdict in accord with the contentions of the plaintiff. From judgment on the verdict defendants appealed.

*W. H. Strickland and J. T. Pritchett for plaintiff, appellee.*
*Hal B. Adams for defendants, appellants.*

BARNHILL, J. This cause was here on a former appeal and is reported in 216 N. C., at page 396, where the facts are fully stated and the law of the case is discussed and decided.

Plaintiff in her petition alleges the true dividing line to be as follows: "Beginning on a large oak on the bank of Lower Creek, and runs North 17 degrees West 22 poles to a stake in Kent's line; then North 3¾ degrees West 109 poles and 17 links to a stake, R. J. Ervin's corner." She then relates this description to the Greer deed executed in 1901. She makes no allegation that the calls in the 1901 deed should be varied. Nor does she allege any fact or circumstance which would justify a variation thereof.

In the trial, however, she took the position that the beginning point—a large oak on the bank of Lower Creek—is at the point A on the court map; that the first and second calls in her deed and the sixth and seventh calls in an old deed executed in 1862 by S. P. Dula to Azor Shell added to the first line of another old deed executed in 1866 by Dula to Shell are the same lines and that by reason thereof, in establishing her line, the variations of the magnetic needle as of 1862 should be allowed.

The court below submitted the cause to the jury under a charge which permitted an answer to the issue upon the assumption that the line was first established in 1862. It instructed the jury: "Now the surveyors who went on the stand, all of them, testified that the proper variation to be allowed in the deed of 1862 was three and one-half degrees, and the surveyors who went on the stand testified that in running the deed of 1938, running the line by the old deed of 1862, that they made the variation of 3½ degrees, which they contend was the proper variation."

At no time, however, did the court instruct the jury as to whether this is or is not the proper variation to be allowed in locating plaintiff's line. Nor did it charge as to what variation, if any, should be considered. Hence, the court failed to instruct as to the proper rule to be followed by the jury in locating the line according to the courses and distances in plaintiff's deed but left it to the jury to decide "what is" as well as "where is" the true dividing line. *Greer v. Hayes,* 216 N. C., 396, 5 S. E. (2d), 169.

As a result the jury answered the issue as on the former appeal, allowing for the variation of the magnetic meridian since 1862. Admittedly the line as thus located is not in accord with the calls in the Greer deed, even when proper allowances are made for the variation of the magnetic meridian since 1901. On the contrary, there is a variance of 3½ degrees. This serves to shift the line easterly over on the property claimed by defendants.

As the plaintiff did not undertake to locate any natural object other than the beginning point and must rely on the courses and distances given in her deed, the indicated omission in the charge is material, *Greer v. Hayes, supra.*

It is the subject matter of one of defendants' exceptive assignments of error. The same question is presented in a different form by tendered prayers for instructions which the court below declined to give.

This identical question was considered and decided adversely to the plaintiff on the former appeal. It was there said "there is nothing to warrant an inference that the calls of the line were copied from or had reference to the Dula deed, or to justify the conclusion that the line is to be ascertained by such calls as of the date of that deed." We still adhere to that declaration which is the law of the case.

The first call in the Greer deed is for "a large black oak on the bank of Lower Creek; thence North 17 degrees West 22 poles to a stake in Kent's line." The calls in the Dula deed, alleged to be the same, are for "the mouth of Tan Yard Branch, Harper's corner; thence North 17 degrees West with Harper's line 22 poles to a stake in the bend of said branch, said Harper's corner." This line begins at a different call on the branch and ends in the bend of the branch. The Greer line extends in a northerly direction from the branch.

The second line in the Greer deed extends from the end of the first line (22 poles from the branch), "North 3¾ degrees West 109 poles and 17 links to a stake, R. J. Ervin's corner." The connecting line in the two Dula deeds, asserted to be the same, begins at a stake in the bend of the branch, Harper's corner, and runs thence 3¾ degrees West 8 poles to a stake (1st. deed); thence (beginning on a persimmon corner at Northeast corner of said Shell's tract in Harper's line) "North 3¾ degrees West with said line 101 poles and 17 links to a stake in said line or rock" (2nd. deed).

There is no evidence tending to show that there was a contemporaneous survey at the time either deed was executed. The acreage in plaintiff's deed is 32½. The acreage in the first Dula deed is 52 and in the second Dula deed is 40, making a total of 92. If the lines of the Dula deeds are surveyed in accord with the calls thereof such lines will not close unless one line is completely ignored.

Thus it affirmatively appears that "the intent of the parties as expressed in the instrument"—the Greer deed of 1901—does not permit the conclusion that the parties copied or intended to adopt the description, or any part thereof, contained in the Dula deeds.

Plaintiff has failed to bring her case within any one of the exceptions to the general rule which would permit such a clear deviation from the description contained in her muniment of title. The instru-

ment speaks for itself, *Bank v. Gaines,* 204 N. C., 278, 167 S. E., 856. The cause should be submitted to the jury under an instruction that upon the ascertainment of the true beginning point the line must be run and established from such point in accord with the courses and distances in the Greer deed as of 1901.

The defendants plead adverse possession but no issue on this plea was submitted to the jury. This, perhaps, was due to a misinterpretation of the opinion on the former appeal.

The burden is on plaintiff to show the true dividing line according to her paper title. If the defendants would vary the location thereof by virtue of their adverse possession of a part of the land embraced within her deed, the burden rests upon them and a separate issue in respect thereto should be submitted. They are bound by the line as established in accord with plaintiff's deed unless they can show that they have acquired title to a part of plaintiff's lands by adverse possession up to a known and visible boundary line. Upon such showing the line must be established as thus located by the defendants, *non constat* plaintiff's record title.

The court below erred in failing to instruct the jury as to what constitutes the true boundary line starting from the admitted or established beginning point as it may be located by the jury and in its refusal to give pertinent prayers for instructions tendered by the defendants.

The indicated error necessitates a

New trial.