J. G. HUFFMAN v. NELL AUSTIN PEARSON AND HUSBAND, CHARLES PEARSON; H. E. AUSTIN, M. L. SUDDRETH AND LAURA SUDDRETH.

(Filed 4 November, 1942.)

**1. Boundaries §§ 1, 9—**

In proceedings to establish a disputed boundary line, what constitutes the dividing line is a question of law for the court, but as to where the line is must be settled by the jury under correct instructions based upon competent evidence.

**2. Boundaries §§ 4, 5—**

In questions of boundary course and distance govern, allowing for variations of magnetic needle, unless there be some more certain description by which one or both may be controlled.

**3. Partition § 1a—**

A judgment in partition is conclusive in respect to the thing in which the parties had an estate in common, and also in respect to the share to which each is entitled, and to the parcel allotted to each. It does not divest the title of anyone not actually or constructively a party; but it operates by way of an estoppel as to parties, subject matter, and issues.

**4. Boundaries § 9: Partition § 1a—**

The primary purpose of partition is to sever the unity of possession of the tenants in common in and to the land in question and, unless specifically brought in issue by the pleadings, the lines of adjoining tracts are not involved and as to such lines neither the parties to the partition nor adjoining owners are estopped thereby. Holding incompetent the record of a partition proceeding between defendant and another, which recognized the lines in issue here.

**5. Boundaries §§ 3, 4, 11—**

In a processioning proceeding, where one corner of plaintiff and defendant is admitted and a partition in 1867 gives the course and distance from the admitted corner to an old blacksmith shop, now destroyed and the location of which was in dispute, it was error for the court to charge the jury that, if they should find that the line was run and marked and a corner made at the old blacksmith shop in 1867 which is the line called for in plaintiff's deed and shown on a map in evidence as running from B to A, they should answer the issue for plaintiff, as it assumes that the location of the blacksmith shop had been fixed.

7—222

APPEAL by defendants Nell Austin Pearson and husband, Charles Pearson, from *Alley, J.,* at May Term, 1942, of CALDWELL.

Processioning proceeding to establish boundary between adjacent lands of petitioner and of defendants, Nell Austin Pearson and her husband, Charles Pearson.

Petitioner alleges in his petition that he is the owner in fee simple and seized and possessed of a certain tract of land adjoining certain land of defendants, Nell Austin Pearson and her husband; that the location of the line between his land and that of said defendants is in dispute; and that the true and correct location of the dividing line is as therein specifically described.

In this connection petitioner alleges and offered documentary evidence tending to show in substance:

1. That on 26 December, 1867, the "Levi Hartley Commissioners" executed a deed to Callie Hartley and Sarah Hartley in which Lot No. 6 containing 300 acres more or less was "assigned and appropriated to Sarah Hartley in severalty," and Lot No. 7 containing 280 acres, more or less, was "assigned and appropriated to Caroline Hartley in severalty"; that as therein described Lot No. 6 begins "at a stake, formerly a white oak, on the south side of the creek in Richmond Hayes' line" and "runs north crossing the creek 272 18/25 poles to a stake; thence with the dower line south 20 W 236 p. to the blacksmith shop . . ."; and that as therein described Lot No. 7 begins on a poplar and runs various specified courses "to a stake, a corner of Lot No. 6; thence with line of said lot and dower line south 20 deg. West 236 poles to the blacksmith shop . . ."

2. That on 8 August, 1884, Callie Hartley and husband conveyed to Leonard Hartley thirteen and one-half acres of Lot No. 7, by description pertinent portion of which reads "thence north 80 deg. East 53 poles to a rock on top of a ridge in the line of Lot No. 6 and dower line; thence south 20 deg. West with said line 84 poles to a stone at the old blacksmith shop, corner of Lot No. 6 in the old Mulberry road"; that this tract of land less one and a half acres passed by *mesne* conveyances to Harvey E. Austin by deed dated 15 October, 1935, who conveyed to plaintiff on 12 August, 1936.

Petitioner further alleges that on 27 January, 1936, in a special proceeding instituted by Harvey E. Austin against Nell Austin Pearson and husband and others for partition of Lot No. 6, which had been "assigned and appropriated to Sarah Hartley (Austin), defendant Nell Austin Pearson was allotted Lot No. 1 A, containing 18 acres, described in pertinent part as, "beginning on an iron pipe on the east margin of highway No. 17 known as the old blacksmith shop corner, opposite the intersection of Collettsville road, and runs north 21 deg. east 84 poles to a

stone, T. W. Austin and George Austin's corner"; that the report of commissioners allotting the lands was duly confirmed and, with accompanying map, was duly recorded, and no appeal was taken from the judgment of confirmation; that at time this proceeding was instituted Harvey E. Austin owned the part of Lot No. 7 described in paragraph next above, that is, the land petitioner now owns; and that at the time the commissioners made their report and their map an iron stake was driven into the ground on the east margin of Highway No. 17 opposite the intersection of the Collettsville road evidencing the beginning corner of the defendant Nell Austin Pearson's tract of land allotted in the commissioners' report.

Petitioner further alleges that defendants Pearson are estopped by the judgment in said special proceeding to deny the location of the dividing line for which petitioner contends, as alleged—they and Harvey E. Austin, who then owned the lot petitioner now owns, being parties thereto.

Defendants Pearson deny that they are estopped by the judgment in this special proceeding to contend otherwise.

Upon the trial, petitioner offered in evidence the entire special proceeding, including the map attached to the report of the commissioners. Defendants Pearson except.

Petitioner further alleges and contends that the call in the description of his land, which reads "thence south 20 deg. west with said line 84 poles to a stone at the old blacksmith shop, corner of Lot No. 6 in the old Mulberry road," and the call in the description of the defendant Nell Austin Pearson's land, which reads, "Beginning on an iron pipe on the east margin of highway No. 17, known as the old blacksmith shop corner, opposite the intersection of the Collettsville road, and runs north 21 deg. East 84 poles to a stone, T. W. Austin's and George Austin's corner" constitute the true dividing line between petitioner and defendants, Nell Austin Pearson and her husband, and that same can be established by "beginning on a stone on top of the ridge, T. W. Austin and George Austin's corner, and running thence south 21 deg. West 84 poles to a stake, formerly an iron pipe stake in the east margin of highway No. 17, opposite the intersection of the Collettsville road, and known as the blacksmith shop corner," "as fully set out in defendants' deed" represented on white map by red line indicated by red letters B to A, or by reversing the same call.

Defendants Pearson, answering the amended petition of petitioner, admit the allegations as to how they and petitioner derive title to their respective tracts of land, and admit that the "stone on top of a ridge," called for in the deed from Callie Hartley and husband to Leonard Hartley, under which petitioner claims, and in description of Lot 1 A, allotted to defendant, Nell Austin Pearson, is located on the boundary

line between their land and that of petitioner; but they deny that the true dividing line is as petitioner alleges and contends, and deny that the judgment in the special proceeding instituted by Harvey E. Austin to which they were parties estops them to contend otherwise. On the other hand, they aver in substance that the dividing line was established in 1867 when the line "south 20 deg. West," the dower line, was called for in the descriptions of Lot No. 6 and Lot No. 7, respectively, assigned and appropriated to Sarah Hartley and to Callie Hartley, respectively, in severalty; that to correctly run that line 72 years later, at time of answering, in accordance with the United States Coast and Geodetic Survey, a magnetic variation of three minutes per year, or three degrees and thirty-six minutes, should be added to the course "south 20 deg. West," and that the line from the admitted "stone on top of a ridge," indicated by red letter B, should be run "south 23 degrees thirty-six minutes West 84 poles."

The record discloses that on trial below only one witness, Watt Presnell, undertook to testify as to the location of the "blacksmith shop" called for in descriptions in question. He testified that he was born and reared in Caldwell County, and in 1938 was 68 years of age and had been a resident of the State of Idaho since 1910, and that he was familiar with the Sarah Austin and Callie Hartley Austin lands. He further testified: "I recall the location of the blacksmith shop. Here sits the barn and the shop is south about 50 feet from the old barn. It is not more than 15 or 20 feet east of the old Blowing Rock road. Q. Mr. Presnell, if the dividing line between the Sarah Hartley Austin lands and the Callie Hartley Austin lands ran from the blacksmith shop north 20 degrees east, on which side of that line did the old barn stand? A. On the Callie Hartley Austin side. Q. Do you know the location of the line where the defendants claim the dower line to be? A. You mean where that stake is that is driven,—yes. It must be 50 yards west of the blacksmith shop where that stake is located." Then, as reason "why I remember being in the shop" the witness detailed the following incident: "When I was just a boy, about five or maybe six, nearer six than five, I went with my aunt . . . to see Mrs. Palmer, and, of course, her two boys, my age, or maybe a little older, and a boy by the name of Bill Munday, and I had always wanted to hear the anvil and so we went in to beat the anvil, and while we were there Joe Palmer came in and he had a hickory in his hand . . . and I thought he was going to kill us all, and I ran and hid behind an old willow tree." Then, continuing, on cross-examination, the witness said: "I was born about one mile from the Austin place . . . I do know where the residence was. Right that way from the old blacksmith shop. With reference to where the residence is now, it was due east, a little bit north. I do not mean east from the

blacksmith shop, about southeast from it, about 30 yards. I remember where the old barn was. It was the barn that Eli Hartley built . . . I do not know about any lines. And my attention has not been called to this disputed line until now when I am 68 years old . . . And the way I remember that it was a blacksmith shop, there was some wagon wheels and blacksmith tools, and I remember beating the anvil. That is the way I remember it, and Joe Palmer coming in there . . . Nothing at all has been mentioned in connection with any boundary or line concerning this case, to me at any time since my childhood until the time I had a discussion with Mr. Austin just before I arrived in North Carolina, nothing at all." Then, on redirect examination, witness said: "Mr. Huffman came and we went to the old place and I went to the old barn and told him I thought it was here where a willow tree was, the old blacksmith shop." And, finally, on recross-examination, the witness continued: "I did say that there had been three barns on that place; one at a time. One was back of the storehouse, this was the old Levi Hartley barn. Watt Austin built the next one over the creek, opposite the storehouse, and Watt Austin the one that is standing on the place now, the present barn. The second barn from the first barn was 75 feet, I guess. . . . Q. Did I understand you to say that the second barn and the old blacksmith shop stood on identically the same spot? A. No, the old barn was a little west of the old blacksmith shop, 20 or 25 feet."

This issue was submitted to and answered by the jury as shown:

"Is the line of the plaintiff's land located as indicated on the map, known as the white map, by the red line extending from red A to red B, as alleged in the amended petition? Answer: Yes."

From judgment in accordance therewith, defendants Pearson appeal to Supreme Court and assign error.

*Hunter Martin and Max C. Wilson for plaintiff, appellee.*
*W. H. Strickland for defendants, appellants.*

WINBORNE, J. Appellants' assignment of error is well taken to this portion of the charge of the court: "So, with respect to this issue, gentlemen, the burden of which is on the plaintiff as I have said, I charge you that if you find by the greater weight of the evidence that the stone on the ridge, indicated on the white map by the red letter 'B' is an admitted corner of both the plaintiff's and the defendants' land, and that the line runs from that point South 21 degrees West to the old blacksmith shop, and you further find that that is the call or line of what is known as the dower line; that that line was run and marked and a corner made at the old blacksmith shop in 1867; and if you further find by the greater weight of the evidence that that is the line called for in the plaintiff's

deed, and you also find by the greater weight of the evidence that that line as originally run in 1867 extended from the stone on the ridge at red 'B' on the white map to the blacksmith shop at red 'A,' as alleged in the petition, and testified to and pointed out by the witness, Watt Presnell, then and in that event I charge you that it would be your duty to answer the issue YES."

The error is the apparent assumption of fact that the blacksmith shop was located at the point indicated on the white map by the red letter A, and that the witness Watt Presnell had so testified and so pointed it out. The location of the blacksmith shop was in dispute. That it was located at the point indicated by the red letter A is a fact that the jury should find from the evidence and by its greater weight before giving an affirmative answer to the issue submitted. While appellants admit that "the stone on the ridge" is correctly represented by the red letter B on the white map, they controvert the location of the blacksmith shop. Furthermore, they contend that the testimony of the witness, Watt Presnell, leaves the location of the blacksmith shop in the realm of uncertainty, and that, on such evidence, the court should hold as a matter of law that the call from "the stone on the ridge" should be run in accordance with the course of the original line common to, and dividing Lots 6 and 7— south 20 degrees west with proper magnetic variation, that is, a variation of 3 degrees and 36 minutes.

It is settled law in this State that, in processioning proceedings to establish a boundary line, which is in dispute, what constitutes the dividing line is a question of law for the court, but a controversy as to where the line is must be settled by the jury under correct instructions based upon competent evidence. *Geddie v. Williams,* 189 N. C., 333, 127 S. E., 423; *Lee v. Barefoot,* 196 N. C., 107, 144 S. E., 547; *Shelly v. Grainger,* 204 N. C., 488, 168 S. E., 736; *Greer v. Hayes,* 216 N. C., 396, 5 S. E. (2d), 169; *Clegg v. Canady,* 217 N. C., 433, 8 S. E. (2d), 246; *Greer v. Hayes,* 221 N. C., 141, 19 S. E. (2d), 232, and many other cases.

It is also a well settled rule in questions of boundary that course and distance govern, unless there be some more certain description by which one or both may be controlled. In conformity with this rule, this Court has held in the case of *Fowler v. Coble,* 162 N. C., 500, 77 S. E., 993, that a call "to a stake at the (Harrington) house" is sufficient to control course and distance. Even so, it is easy to conceive difficulty in practical application of the rule to an object of the size of a house. Nevertheless, the rule as applied in the *Fowler case, supra,* pertinent to case in hand, places the burden upon the petitioner to satisfy the jury from the evidence, and by its greater weight, where the blacksmith shop stood in 1867, the date of the deed from "Levi Hartley commissioners" to Callie Hartley and Sarah Hartley, before the course and distance from "the

stone on the ridge," the agreed corner, should give way; and if the petitioner has failed to so satisfy the jury, then course and distance, with proper magnetic variation, would control.

Appellants further assign as error the admission in evidence of the partition proceeding by which Lot No. 6 was subdivided and under which defendant Nell Austin Pearson acquired land involved here.

While the general rule is that judgment of a court of competent jurisdiction is final and binding upon parties and privies, ordinarily to constitute a judgment an estoppel, there must be (1) identity of parties, (2) identity of subject matter, and (3) identity of issues. McIntosh N. C. P. & P., page 748; *Hardison v. Everett,* 192 N. C., 371, 145 S. E., 769; *Gibbs v. Higgins,* 215 N. C., 201, 1 S. E. (2d), 554, and cases cited.

Applying this principle to partition proceedings, it is stated by *Ruffin, C. J.,* in *Stewart v. Mizzell,* 43 N. C., 242, that "a judgment at law, in partition, is conclusive, in respect to the thing in which parties had an estate in common, and also in respect to the share to which each was entitled, and to the parcel allotted to each as his share." And in *Buchanan v. Harrington,* 152 N. C., 333, 67 S. E., 747, *Manning, J.,* citing from 30 Cyc., 310, quotes in part: " 'The truth is that a judgment in partition is as conclusive as any other. It does not create or manufacture a title, nor divest the title of anyone not actually or constructively a party to the suit; but it operates by way of estoppel; it prevents any of the parties from relitigating any of the issues presented for decision, and the decision of which necessarily entered into the judgment, and it divests all titles held by any of the parties at the institution of the suit.' " See *Crawford v. Crawford,* 214 N. C., 614, 200 S. E., 421, and cases cited.

Furthermore, "the primary purpose of partition proceedings is to sever the unity of possession," *McKimmon v. Caulk,* 170 N. C., 54, 86 S. E., 809, of the tenants in common in and to land in question. Unless specifically brought in issue by the pleadings the lines of adjoining tracts are not involved. Hence, where under a judgment in a partition proceeding a party thereto accepts the allotment, in severalty, of a described part of the land, the subject of the action, which abuts on other land, which is not the subject of the action, and which is owned by another, such party is not estopped to contend for the true location of the outside boundary line of the part so allotted to him, even though the adjoining land be owned by one of the tenants in common in the subject of the action, and a party to the proceeding.

Hence, we are of opinion that the record in the partition proceeding is incompetent to show the location of an outside line of the land, which is the subject of partition. However, there may be circumstances under which such record may be competent as evidence tending to show acqui-

escence in the location of such outside line, yet such circumstances do not appear in the record on this appeal.

As the case must go back for a new trial, we express no opinion and make no decision on the question as to the sufficiency of the evidence to take the case to the jury as to the location of the blacksmith shop, particularly in view of the fact that on the issue as submitted a negative answer would leave unsettled the location of the dividing line between lands of petitioner and defendants Pearson. In *Greer v. Hayes*, 216 N. C., 396, 5 S. E. (2d), 169, the form for a single issue is suggested.

Other assignments are not considered here, as the matters to which they relate may not recur on another trial.

New trial.