J. W. WELBORN AND WIFE, MARY R. WELBORN, v. BATE LUMBER
COMPANY.

(Filed 23 September, 1953.)

**1. Trespass to Try Title § 1: Boundaries § 6—**

Where, in an action in trespass, the parties stipulate that each has title
to his respective tract and that the only controversy is as to the true loca-
tion of the dividing line between the tracts, the action is converted into a
processioning proceeding.

**2. Boundaries § 6—**

In a processioning proceeding what constitutes the true dividing line
between the respective tracts of the parties is a question of law for the
court while the location of the line must be settled by the jury under cor-
rect instructions based upon competent evidence.

**3. Boundaries § 10—**

In a processioning proceeding the question as to the location of the true
dividing line must be submitted to the jury upon the conflicting evidence,
and nonsuit may not be entered even though the evidence be such as to
warrant a peremptory instruction on the issue, since a nonsuit in an action
*in rem* settles nothing.

APPEAL by plaintiffs from *Bone, J.,* May Term, 1953, BEAUFORT.
Reversed.

Civil action in trespass *quare clausum fregit,* converted into a pro-
cessioning proceeding by stipulation of the parties.

In 1929 Eliza B. Branch, Burton Craig, and others, heirs at law of
Nancy H. Branch, owned a boundary of land in Beaufort County con-
taining more than 3,200 acres, lying partly within and partly without
Little Swift Creek Drainage District. On 3 October 1929 they conveyed
all of said tract of land lying within said district, containing 920 acres,
to James H. Cassell. The northern boundary line of the district between
Lateral No. 3 and Lateral No. 4 is the northern boundary line of the tract
conveyed and the southern boundary of the land retained by the grantors.
Defendant, through *mesne* conveyances, has acquired title to and now
owns said Cassell tract lying within said district. Plaintiffs have ac-
quired title to and now own the original boundary lying north of the
northern boundary line of the district not conveyed to Cassell.

The establishment of the drainage district including the cutting of the
canals or laterals was completed in 1924. The description in the deed to

Cassell executed in 1929 contains the following: "Bounded on the South and West by Lateral No. 3 of Little Swift Creek Drainage District, on the East by Lateral No. 4 of Little Swift Creek Drainage District, on the North by the boundary line of said District, it being tract No. 8 as shown on the maps of said Drainage District . . ." Plaintiffs contend that the true dividing line extends from the head of Lateral No. 4 to the head of Lateral No. 3 as they were originally cut and now exist. Defendant contends that the cutting of Lateral No. 3 was never completed in accord with the plans and specifications of the district, and its true head, according to such plans and the final map thereof, is at a point 38 chains and 59 links beyond its head as actually cut. That is, it contends that the head of Lateral No. 3 as contemplated by the description in the deeds which constitute its chain of title is the Lateral No. 3 extended approximately one-half mile, and that the true dividing line runs from the head of Lateral No. 4 to this point.

Plaintiffs instituted a special proceeding under G.S. Ch. 38 to locate, establish, and fix the true boundary line between the two tracts. Defendant proceeded to cut and remove timber from the area in dispute and refused the request of plaintiffs to cease and desist until the line was judicially determined. Plaintiffs thereupon instituted this action for damages and to restrain the alleged trespass.

During the trial in the court below, at the conclusion of plaintiffs' evidence, the parties entered of record a stipulation as follows:

"IT WAS STIPULATED that the line claimed by the plaintiff Wellborn extends from the head of Canal No. 4 to the head of Canal No. 3 as the said two canals have been cut and are located on the ground. The line claimed by the defendant Bate Lumber Company extends from the head of Canal No. 4 to a point North 43 deg. 45′ West 38.59 chains from the head of said canal 3 which is 2,545 feet and the land in controversy is a triangle formed by these three lines. Defendant Bate Lumber Company has cut timber on this triangle. IT IS FURTHER STIPULATED that if the line is as claimed by plaintiff and plaintiff is the owner of the triangle, the defendant Bate Lumber Company will compensate plaintiff for the timber cut in an amount to be agreed upon or, upon failure to agree as to the amount, an issue may be submitted at a subsequent term of the Court."

At the conclusion of the evidence, the court, on motion of defendant, entered judgment dismissing the action as in case of nonsuit, and plaintiffs appealed.

*Rodman & Rodman for plaintiff appellants.*

*McMullan & McMullan and John A. Wilkinson for defendant appellee.*

BARNHILL, J.   Title to real property is not at issue in this action. Plaintiffs and defendant admit the parties own the respective tracts claimed by them. The two tracts are contiguous and the northern boundary of the drainage district is the true dividing line. The exact location of this line is the question at issue. Realizing this, the parties entered into certain stipulations quoted in the statement of fact. These stipulations converted the trial in the court below into a processioning proceeding. *Goodwin v. Greene,* 237 N.C. 244. Thereafter, the action was not subject to dismissal as in case of nonsuit. *Cornelison v. Hammond,* 225 N.C. 535, 35 S.E. 2d 633; *Plemmons v. Cutshall,* 230 N.C. 595, 55 S.E. 2d 74.

In any event, there is evidence in the record tending to locate the true dividing line as contended by the plaintiffs. At the time the unity of title was severed by the Branch heirs and that part of the original tract which is now owned by defendant was conveyed to Cassell, the canals had been cut. The head of Canal No. 3 was an ascertainable point then in existence. And on this question the engineer who made the preliminary survey testified: "When the District was established, I was familiar with its boundaries and the canals to be cut. I was likewise familiar with the plans and specifications for the canals. The canals in that District were all cut in accordance with the plans and specifications and orders of the Court."

There is other evidence in the record tending to establish the head of Canal No. 3 at a point in the northern boundary of the district and as the terminus of the line in controversy.

"It is settled law in this State that, in processioning proceedings to establish a boundary line, which is in dispute, what constitutes a dividing line is a question of law for the court, but a controversy as to where the line is must be settled by the jury under correct instructions based upon competent evidence. (citing cases)" *Winborne, J.,* in *Huffman v. Pearson,* 222 N.C. 193, 22 S.E. 2d 440.

Therefore, on this record, it was the duty of the court to submit an issue similar in form to the one suggested in *Greer v. Hayes,* 216 N.C. 396, 5 S.E. 2d 169; *Huffman v. Pearson, supra;* and *Goodwin v. Greene, supra,* except that it should read "where" rather than "what" is the true dividing line, etc. It should then have instructed the jury what, under the law and the evidence in the case, constitutes such boundary or dividing line.

That the evidence may be such as to warrant a peremptory instruction on the issue does not alter the rule that requires a jury to say, under proper instructions, where the line is actually located or justify a dismissal of the action. In an action *in rem* a judgment of nonsuit settles

nothing. And plaintiffs are entitled to judgment judicially locating and fixing the true dividing line even if it is finally located as contended by defendant. Only in this manner may it be determined whether defendant has committed a trespass on the land of plaintiffs.

The judgment entered in the court below is

Reversed.