ERIC GREEN AND CORNIE G. GREEN, WIDOW v. LUCIOUS BARKER AND WIFE, MARIE T. BARKER.

(Filed 3 May, 1961.)

**1. Boundaries § 7—**

In a processioning proceeding the line dividing the property should be located, and nonsuit is inapposite.

**2. Boundaries § 2—**

Marked trees are sufficient natural objects to control course and distance.

**3. Same—**

The boundary between fixed corners will ordinarily be run as a straight line, but when the description calls for the line along natural objects, such as a stream or a line of marked trees, the line must be run in accordance with the natural objects.

**4. Same—**

Where the description calls for natural objects as the boundary be-

GREEN *v.* BARKER.

tween fixed corners, such as a line of blazed trees, such line must follow the natural objects, and thus may be a straight line or a deviation from a straight line, depending upon the facts.

**5. Same—**

Where the description of the boundary between fixed corners calls for a line of blazed trees, the party claiming a deviation from a straight line to follow the natural objects must locate the trees and show that the blazes appearing thereon were in existence at the time the description was drawn, and when he fails to do so, he may not claim a deviation from a straight line between the fixed corners.

**6. Trial § 31f—**

It is error for the court to submit a contention of a party to the jury and permit a finding favorable to the party upon such contention when there is no evidence in the record to support the contention.

APPEAL by respondents from *Carr, J.,* November 1960 Term of GRANVILLE.

This is a processioning proceeding to establish the eastern boundary of petitioners' land, the western boundary of respondents' land. The parties agree on the location of the northeast and southeast corners of petitioners' land. Respondents' land does not extend as far south as the lands of petitioners. A straight line from petitioners' southeast corner to their northeast corner is north 17½ east. Respondents assert this is the true dividing line. Petitioners recognize this as the true line where adjacent to their northeast and southeast corners but insist that the division line departs to the east of the straight line so as to go by what are now pine stumps, but which, when they purchased in 1933, were blazed or marked pine trees.

Petitioners trace title to Roberta Clay Allen, a daughter and devisee of Chastine Allen. Respondents trace title to Martha H. Barker, a daughter and devisee of Chastine Allen. The will of Chastine Allen, dated 23 January 1874, fixes the dividing line between the lands of his daughters Martha and Roberta in this language: "I commenced at Butler's land, black oak sapling, run north by a blazed pine chopped line through the old field across the creek to Ellis' line." The parties agree that the black oak sapling at Butler's land is now indicated by a stone in Mrs. Fisher's line, and the northern terminus of the line is an iron post in Macon Bonner's line.

The jury fixed the line as contended by petitioners. Judgment was entered on the verdict and respondents appealed.

*Hugh M. Currin for petitioner appellees.*

*Gaither M. Beam, Royster & Royster, and Gholson & Gholson for respondent appellants.*

RODMAN, J. Respondents moved for judgment of nonsuit, contending petitioners had offered no evidence to establish the line claimed by them. The motion was properly overruled. In a processioning proceeding title is not involved. The line dividing the properties should be located. *Welborn v. Lumber 'Co.*, 238 N.C. 238, 77 S.E. 2d 612.

*Gaston, J.*, said in *Shultz v. Young*, 25 N.C. 385: "*Prima facie* a call in a grant for one *terminus* to another is understood to mean a direct line from the former to the latter point. But assuredly there may be accompanying words of description, which will indicate that the line is not to be a direct line. Thus it is of ordinary occurrence that, when the call is with a river or creek from one *terminus* to another, the river or creek, however crooked its direction or numerous its courses, if it will carry you to the proposed *terminus*, must be followed throughout." Marked trees are sufficiently permanent in character to fall in the category referred to by Judge Gaston. *Brown v. Hodges*, 233 N.C. 617, 65 S.E. 2d 144; *Lumber Co. v. Lumber Co.*, 169 N.C. 80, 85 S.E. 438. The natural object referred to in the description merely locates the route to be traveled. *Bowen v. Lumber Co.*, 153 N.C. 366, 69 S.E. 258; *Long v. Long*, 73 N.C. 370. The line of another tract known and established is sufficient to require deviation from a straight course. *Batson v. Bell*, 249 N.C. 718, 107 S.E. 2d 562.

The phrase in the description "north by a blazed pine chopped line" suffices to point to the route to be followed to reach the corner, but the language does not say that the blazed pine chopped line is not in fact a straight line and that one must deviate from a straight line to reach the corner. When *the* blazed pine chopped line called for in the description has been located, that fixes the location of the route which must be followed in going from one corner to the other. Deviation is not justified merely by showing *a* blazed pine chopped line. If the blazed pine chopped line is not in fact the one referred to in the description, it can have no effect. *Batson v. Bell, supra; Seawell v. Fishing Club*, 249 N.C. 402, 106 S.E. 2d 486; *Hoge v. Lee*, 184 N.C. 44, 113 S.E. 776; *Carter v. Vann*, 189 N.C. 252, 127 S.E. 244; *Sherrod v. Battle*, 154 N.C. 345, 70 S.E. 834; *Rodman v. Gaylord*, 52 N.C. 262.

Trees chopped and blazed long after Chastine Allen made his will fixing the dividing line between his daughters could not change the line then made. Such blazing would be comparable to the attempt to fix the lines of a senior deed or grant by the lines of a junior instrument. Both are prohibited. *Harris v. Raleigh*, 251 N.C. 313, 111 S.E. 2d 329; *Coffey v. Greer*, 241 N.C. 744, 86 S.E. 2d 441; *Belhaven v. Hodges*, 226 N.C. 485, 39 S.E. 2d 366.

The parties were in disagreement as to whether or not there had ever been a blazed or chopped line at the points claimed by petitioners.

Respondents and a surveyor, who surveyed the property shortly after petitioner purchased, testified in the negative. Petitioners first became familiar with the property in 1933. They purchased shortly after they first saw the property. They testified that when they purchased, the line dividing the two properties was indicated by a hedgerow with blazed pines. They testified that the trees were large and old, but nowhere did they testify as to the probable age of the blazes or chops. No evidence was offered tending to relate the age of the blazes or chops claimed by petitioners to the date of the will made by the common ancestor. No evidence was offered tending to show that the line claimed by them had the reputation of being the dividing line between the properties. No evidence was offered tending to show any admissions made by the owners prior to respondents that the line asserted by petitioners was the true line. An expert forester, who saw one of the blazed trees claimed by petitioners, expressed the opinion the tree had been blazed about ten years.

Respondents assign as error the following portion of the Court's charge: "The petitioners contend that you should locate it from A to C, contending that the black line is the true line on the map calling attention to the fact that they have offered evidence of the existence of chopped trees on that line, and that in accordance with the Court's instructions, that the line would not run north, due north, but would run, if there were chopped trees at the time that Allen made his will; that the line would run by those chopped trees and they contend that they have offered evidence of the presence of chopped trees in fairly recent times, at least in the 1930's and early forties, I believe; that they saw them there and that they were large trees and contend that you should find that they were trees that were in existence at the time that Allen made his will and that those chops were on there at that time and that you should so find and conclude that the line ran in accordance with their contention following a course running by some chopped pines, a pine chopped line."

Respondents properly say there is no evidence on which a jury could find that the chops described by petitioners were made as early as 1874, the date of the Allen will; and because of the absence of evidence to support the contention, the court was in error in permitting the jury to find in favor of petitioners based on that contention. The exception is well taken. *Lookabill v. Regan*, 245 N.C. 500, 96 S.E. 2d 421; *Baxley v. Cavenaugh*, 243 N.C. 677, 92 S.E. 2d 68; *Supply Co. v. Rozzell*, 235 N.C. 631, 70 S.E. 2d 677; *Blanton v. Dairy*, 238 N.C. 382, 77 S.E. 2d 922.

New trial.